# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-00923-COA

WILLIAM T. KELLEY, INDIVIDUALLY AND                    APPELLANT
D/B/A WILLIAM T. KELLEY, LLC

v.

CORINTH PUBLIC UTILITIES COMMISSION,                   APPELLEES
CITY OF CORINTH, MISSISSIPPI AND CITY
OF CORINTH GAS AND WATER
DEPARTMENT

| | |
|---|---|
| DATE OF JUDGMENT: | 04/19/2013 |
| TRIAL JUDGE: | HON. JAMES LAMAR ROBERTS JR. |
| COURT FROM WHICH APPEALED: | ALCORN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DAVID L. CALDER |
| | CORY RICHARD GANGLE |
| ATTORNEYS FOR APPELLEES: | ROBERT GLENN KROHN |
| | WILLIAM HULL DAVIS JR. |
| NATURE OF THE CASE: | CIVIL - PROPERTY DAMAGE |
| TRIAL COURT DISPOSITION: | GRANTED SUMMARY JUDGMENT IN FAVOR OF THE APPELLEES |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 01/19/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WILSON, J., FOR THE COURT:**

¶1. William Kelley accepted a bid from the Corinth Gas and Water Department (Department) to install water lines at the site of a proposed subdivision he was developing. The Department installed the lines but allegedly caused significant damage to the property. Kelley alleges that the Department failed to repair the damage and restore his property to its original condition despite having repeatedly assured him that it would do so at the conclusion

of the project. Kelley alleges that he was forced to pay another contractor $310,000 to repair the damage done by the Department and that ultimately he lost the property in foreclosure as a result of the Department's actions.

¶2. Kelley served a notice of claim under the Mississippi Tort Claims Act (MTCA) on the Department, the City of Corinth (City), and the Corinth Public Utilities Commission (Commission). He then filed a complaint in the Alcorn County Circuit Court in which he named the same parties as defendants and asserted claims for negligence and various other torts. The court later granted Kelley leave to amend his complaint to add claims for breach of contract and inverse condemnation under the Mississippi Constitution. The defendants moved for summary judgment, raising various defenses under the MTCA, and also moved to stay discovery pending a ruling on their summary judgment motion. The circuit court stayed discovery and later granted summary judgment in favor of all defendants on all claims. In its order granting summary judgment, the circuit court concluded, inter alia, that the MTCA's statute of limitations expired before Kelley filed his notice of claim and that Kelley's contract and inverse condemnation claims failed as a matter of law.

¶3. On appeal, Kelley argues that the circuit court (1) erred by ruling that the Department is a political subdivision entitled to the protections and immunities of the MTCA; (2) erred by ruling that his tort claims against all defendants are barred by the MTCA's statute of limitations; (3 & 4) erred by ruling that his contract and inverse condemnation claims fail as a matter of law; and (5) abused its discretion by staying discovery. We affirm with one exception: we conclude that there is a genuine issue of material fact as to whether the

2

MTCA's statute of limitations expired before Kelley filed his notice of claim. Accordingly, we affirm in part and reverse and remand in part for further proceedings consistent with this opinion.

**FACTS AND PROCEDURAL HISTORY**

¶4. The City of Corinth is a municipal corporation. In 1954, pursuant to state law, Mississippi Code Annotated section 21-27-13 (Rev. 2015), the City established the Commission to control, manage, and operate the city-owned natural gas and water systems. The Commission then established the Department to manage the day-to-day operations of the systems, subject to the oversight and control of the Commission. As will be discussed below, the Department is essentially the operating arm of the Commission.

¶5. In 2006, Kelley was in the process of developing a new subdivision in Corinth, Magnolia Lake Estates, and he solicited bids for the installation of water lines at the site. The Department submitted the low bid, which Kelley accepted.[1] In July 2007, Kelley signed a document prepared by the Department showing a total estimated construction cost of $133,684.48. The document specified that Kelley would be required to pay 60% of that amount prior to construction and an additional 20% once construction was 75% complete. Once installation of the lines was completed, Kelley would be required to pay the remaining balance of the actual cost of construction. Prior to the Department beginning work, Kelley was required to have built all proposed city rights of way and utility easements to "finished

---

[1] The Commission also authorized the Department to install gas lines at the site; however, according to the Department's construction superintendent, Chris Latch, the gas lines were not part of the Department's bid but were installed at the Department's own expense as an improvement to its gas distribution network.

grade" and "a good gravel base" for proposed city streets.

¶6.     Installation of the water and gas lines began in September 2007. In January 2008, the Department finished work and submitted a final invoice to Kelley requesting payment of $70,032.81.

¶7.     In response to the Department's request for final payment, William Lambert, an architect, inspected the site on behalf of Kelley's lender, Regions Bank. In an email, Lambert reported to Regions that the Department had installed all necessary water and gas lines "per the contract documents." However, Lambert was "thoroughly appalled" by extensive damage that the Department had done to the property—a "minimum of $250,000.00 . . . of damage" in his opinion—which he had discussed with both Kelley and Kelley's engineer. Lambert's email suggests that the Department had indicated that it was unable or unwilling to repair the damage. Lambert recommended that Regions not make final payment, stating that he "would hope that this matter would be resolved by minimum construction standards by [the Department] prior to payment." Regions deemed the project incomplete and denied final payment to the Department. Kelley does not deny discussing the damage to the site with Lambert, but he does deny that he saw Lambert's email for several weeks after it was sent.

¶8.     According to Kelley, while the utility lines were being installed, he "was concerned about the amount of damage [the Department] was causing, but [he was] repeatedly assured that [the Department] would restore the land to its original condition after [its] work was completed." Thus, in February 2008, he "met with representatives of [the Department] to

4

discuss the additional work that remained to be done at the site." He spoke with the Department's construction superintendent, Chris Latch, on February 19 and either February 25 or 26, and Latch said "that he would have to check with [Department] officials in regard to [Kelley's] request that [the Department] repair the damage . . . and restore the work site to the condition it was in before [the Department] began its work." Thereafter, Kelley continued to meet with representatives of the Department. In his affidavit, Kelley states that in a March 2008 meeting, the Department's manager stated "that he was new in his position," so "he would have to review [the] situation, and get back to [Kelley] on when [the Department] would" repair the damage and restore the property. Kelley states that "the first time any representative of [the Department] advised [him] that they were not going to do any additional work on the project" was at a meeting "in late March or early April of 2008."[2]

¶9.     Kelley claims that the Department then told him that he should pay the final invoice and sue them for damages for any defective work. When Kelley did not pay, the Department filed a construction lien against the property. The Department also advised Kelley that he could present his claim to the Commission, which he did at the Commission's July 14, 2008 meeting. On July 21, 2008, the Commission informed Kelley that it saw "no reason to change its position in the matter." The Commission stated that it would "ask [its] outside engineering firm to investigate the situation to see if any information ha[d] been overlooked." But the Commission also advised Kelley that he needed to pay the final invoice "before the utilities [could] be reinstated in the development."

---

[2] During March and April, the Department performed some additional work on the property, but only to fix a water leak, not to repair damage to the property.

5

¶10. Kelley alleges that he was forced to pay another contractor $310,000 to repair the damage and restore the property. Kelley claims that he exhausted his financing and could not complete the subdivision as a result of this unforeseen cost. He also alleges that the City refused to issue a final approval of the subdivision because of the Department's construction lien against the property. Kelley eventually lost the property in foreclosure.

¶11. On February 15, 2009, Kelley served the City, the Commission, and the Department with a notice of claim pursuant to the MTCA. *See* Miss. Code Ann. § 11-46-11(2)(a) (Supp. 2015). On June 9, 2009, he filed a complaint against the same three parties in the Alcorn County Circuit Court, which he amended in September 2009, April 2010, and September 2011. Kelley's first two complaints asserted only negligence and other tort claims, the third added a claim for breach of contract, and the fourth added an inverse condemnation claim under the Mississippi Constitution.

¶12. Prior to any discovery in the case, the defendants moved for summary judgment, asserting various defenses under the MTCA, and moved to stay discovery pending a ruling on their motion for summary judgment. The circuit court stayed discovery, and on April 24, 2013, the court entered an order granting summary judgment in favor of all defendants on all claims. The court concluded that the MTCA did not waive the defendants' sovereign immunity with respect to Kelley's claims for fraudulent inducement, tortious interference with business relations, or tortious interference with contract or his demands for punitive damages, attorneys' fees, and prejudgment interest. In addition, the court concluded that the MTCA's one-year statute of limitations had run on Kelley's remaining tort claims.

6

¶13. Kelley subsequently filed a motion to clarify or correct the order granting summary judgment, arguing that the court's order failed to address his breach of contract and inverse condemnation claims. The circuit court entered a supplemental order granting summary judgment and specifically rejecting those claims on November 7, 2013. The court reasoned that Kelley's "breach of contract claim was simply a re-labeled tort claim"; that Kelley failed to identify any provision of a written contract that had been breached; and that any alleged oral contract with the defendants was unenforceable. The circuit court also ruled that Kelley's inverse condemnation claim failed as a matter of law because the property was not damaged for any "public use."

**STANDARD OF REVIEW**

¶14. "We review the grant or denial of a motion for summary judgment de novo, viewing the evidence 'in the light most favorable to the party against whom the motion has been made.'" *Karpinsky v. Am. Nat'l Ins.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013) (quoting *Pratt v. Gulfport–Biloxi Reg'l Airport Auth.*, 97 So. 3d 68, 71 (¶5) (Miss. 2012)). "A grant of summary judgment will be upheld only when, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact." *Forbes v. Gen. Motors Corp.*, 993 So. 2d 822, 824 (¶7) (Miss. 2008). "Only when the moving party is entitled to judgment as a matter of law is summary judgment appropriate." *Id.* However, the non-moving "party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or [depositions, answers to interrogatories, or admissions], must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e). "This

7

Court [also] uses a de novo standard of review when presented with questions of law, including issues concerning statutes of limitations," *Forbes*, 993 So. 2d at 824 (¶7), and "the application of the MTCA." *City of Jackson v. Harris*, 44 So. 3d 927, 931 (¶19) (Miss. 2010).

**ANALYSIS**

¶15.   We first address the two issues that this appeal raises under the MTCA: whether the Department is a "political subdivision" entitled to the MTCA's immunities and protections and whether there is any genuine issue of material fact precluding summary judgment based on the MTCA's statute of limitations.  We then address the remaining issues in the appeal: whether Kelley's contract claim or inverse condemnation claim survives summary judgment and whether the circuit judge abused his discretion by staying discovery.

**I.     The Corinth Gas and Water Department is a political subdivision.**

¶16.   "The City of Corinth is a municipal corporation and is the county seat of Alcorn County, Mississippi.  The Corinth Gas and Water Department is an arm of the City of Corinth and is operated by the Corinth Public Utilities Commission." *Putt v. City of Corinth*, 579 So. 2d 534, 535 (Miss. 1991).  Nothing has changed in the last twenty-five years.

¶17.   The City created the Commission in 1954 to "control, manage, and operate" the gas and water utility systems owned by the City.  Consistent with the laws authorizing its creation,[3] the Commission's bylaws provide that it "shall control, manage and operate the Water and Gas Departments of the City of Corinth." *See also* Miss. Code Ann. § 21-27-17 (Rev. 2015) ("[The Commission] shall have the entire control and management of such

---

[3]   The Commission was created pursuant to chapter 494 of the General Laws of 1950, now codified as amended in title 27, chapter 21 of the Mississippi Code Annotated.

8

[utility] system or systems . . . ."). The Commission appoints the head of the Department, who serves at the Commission's will and pleasure and is charged with implementing and executing the Commission's policies and decisions. *See id.* In short, the Department is simply an operating arm of the Commission.

¶18. All three defendants easily satisfy the MTCA's definition of "political subdivision" and are therefore entitled to the MTCA's protections and immunities. At the time Kelley's claim accrued and the complaint in this case was filed, the term "political subdivision" was defined to include:

> [A]ny body politic or body corporate other than the state responsible for governmental activities only in geographic areas smaller than that of the state, including, but not limited to, any . . . municipality . . . or other instrumentality thereof, whether or not such body or instrumentality thereof has the authority to levy taxes or to sue or be sued in its own name.

Miss. Code Ann. § 11-46-1(i) (Rev. 2012). Even assuming that the Commission and Department are sufficiently distinct that they should be analyzed separately, the Department is also "responsible for governmental activities." Indeed, its functions are declared by statute as "necessary . . . to secure the public health, safety, convenience and welfare." Miss. Code Ann. § 21-27-67 (Rev. 2015); *see Spencer v. Greenwood/Leflore Airport Auth.*, 834 So. 2d 707, 710 (¶10) (Miss. 2003) (citing a similar statute as evidence that an entity was a political subdivision responsible for governmental activities). At the very least, the Department is a political subdivision because it is as an "instrumentality" owned, managed, and operated by the Commission. *See Bolivar Leflore Med. Alliance LLP v. Williams*, 938 So. 2d 1222, 1232

9

(¶28) (Miss. 2006) (*BLMA*).[4]

¶19.    From the foregoing, it should be clear that the Department is a political subdivision, but Kelley argues that it is not or that it "stepped out of that role" in this case.  Specifically, Kelley argues that the Department "engaged in a proprietary activity," "acted as a private entity, and therefore stood alone as a private contractor in this case."[5]  However, the MTCA expressly applies to political subdivisions when engaged in both "governmental" *and* "*proprietary*" activities.  Miss. Code Ann. § 11-46-3(1) (Supp. 2015) (emphasis added); *Davis v. Forrest Royale Apartments*, 938 So. 2d 293, 295 (¶6) (Miss. Ct. App. 2006).[6]  The

---

[4] In *BLMA*, a community hospital, which is a political subdivision, established a family medical clinic with two physicians.  The hospital owned ninety-eight percent of the partnership and appointed two-thirds of its executive committee. *BLMA*, 938 So. 2d at 1223 (¶2). The Supreme Court concluded that "[s]uch control clearly qualifie[d the clinic] as an intermediary or agent through which certain functions [of the hospital were] accomplished." *Id.* at 1232 (¶28).  Accordingly, the Court "conclusively" found that the clinic was an "instrumentality" of the hospital "entitled to the protections, limitations, and immunities of the MTCA." *Id.*

[5] Appellant's Br. at 41-42 (citing *Bradley v. Jackson*, 153 Miss. 136, 119 So. 811 (1928); *Jones v. City of Amory*, 184 Miss. 161, 185 So. 237 (1939); *Morgan v. City of Ruleville*, 627 So. 2d 275 (Miss. 1993)).

[6] *See also Fortenberry v. City of Jackson*, 71 So. 3d 1196, 1203 (¶23) (Miss. 2011) ("The history of sovereign immunity in Mississippi shows that municipalities were not given immunity with regard to proprietary functions *until recently*." (emphasis added)), *overruled on other grounds by City of Magee v. Jones*, 161 So. 3d 1047, 1050 (¶9) (Miss. 2015); *Gale v. Thomas*, 759 So. 2d 1150, 1152-53 (¶¶8-12) (Miss. 1999) (explaining that an "interim" version of section 11-46-3, which was in effect for only six months in 1993, excepted claims arising out of the "proprietary" activities of municipalities, but the permanent version of the statute contains no such exception); *City of Tupelo v. Martin*, 747 So. 2d 822, 828 (¶19) (Miss. 1999) ("Prior to the enactment of the MTCA, we did use the governmental/proprietary function test in applying sovereign immunity to municipalities. However, with the enactment of the MTCA, that test is no longer applicable to claims subject to the MTCA except to the extent which it may be incorporated in the provisions of the MTCA." (citations omitted)).

10

cases that Kelley cites all predate the MTCA; they are no longer good law for the proposition

for which he cites them. Under the MTCA, once it is established that the Department is

"responsible for governmental activities," Miss. Code Ann. § 11-46-1(i) (Supp. 2015),

allegations that it "engaged in a proprietary activity" or "acted as a private entity" in a

particular case are irrelevant. The MTCA's protections extend to those activities as well.

The Department remains a political subdivision for purposes of the MTCA regardless of

whether it is providing utility services, installing utility lines, or even selling slugburgers.

## II. Genuine issues of material fact preclude summary judgment based on the MTCA's statute of limitations.

¶20. While the MTCA clearly covers all three defendants, the question whether Kelley's

tort claims[7] are barred by the MTCA's one-year statute of limitations is much closer. The

circuit court concluded that the claim accrued on or before February 5, 2008, because by that

point, installation of the utility lines was complete, the Department had requested final

payment, and the damage was apparent and known to Kelley. And because Kelley did not

---

[7] The circuit court correctly held that the MTCA does not waive the defendants' sovereign immunity with respect to Kelley's claims for fraudulent inducement and tortious interference with business relations or his demands for punitive damages, attorneys' fees, and prejudgment interest. *See* Miss. Code Ann. § 11-46-5(2) (Supp. 2015) ("a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud [or] malice"); *id.* § 11-46-15(2) (barring an award of punitive damages, attorneys' fees, or prejudgment interest on any claim subject to the MTCA); *Zumwalt v. Jones Cty. Bd. of Supervisors*, 19 So. 3d 672, 688 (¶¶83-84) (Miss. 2009) (holding that sovereign immunity applies to claims alleging tortious interference with business relations because the tort requires proof of malice). Kelley has not specifically addressed this issue on appeal. Accordingly, we affirm the circuit court's grant of summary judgment with respect to these claims. In this part of the opinion, when we refer to Kelley's "tort claims" we mean his remaining claims, including his negligence claim, that are not barred by sovereign immunity.

serve his notice of claim until February 15, 2009, the circuit court concluded that his claim was barred by the statute of limitations. *See* Miss. Code Ann. § 11-46-11(3)(a) (Supp. 2015). For the reasons that follow, we conclude that the affidavits submitted by Kelley set forth sufficient facts to create a genuine issue of material fact precluding summary judgment.

¶21. As discussed above, on February 5, 2008, William Lambert sent an email to Regions in which he confirmed that the lines were installed, but he also reported that the Department had caused extensive damage to the property. Lambert's email also seemed to indicate that the Department was unable or unwilling to repair the damage. Lambert stated that he was "appalled" by the state of the property, which he had discussed with Kelley and Kelley's engineer. Lambert closed the email by stating that he "would hope" that the Department would restore the property "prior to payment." Based on Lambert's report, Regions denied the Department's request for final payment. In an affidavit submitted in 2010, Lambert stated that he recommended that Regions not make final payment because the Department's work "was not completed." Lambert also stated that the Department never "indicated [to him] that [it] did not intend to finish the work." The defendants argue that Lambert's email demonstrates that by February 5, 2008, the alleged tortious conduct had occurred, and Kelley was aware of it. Thus, they argue that Lambert's email establishes that the statute of limitations began to run on or before February 5, 2008.

¶22. In his own affidavit, Kelley emphasizes that Lambert worked for Regions, not him. Kelley also avers that he "was not personally aware of [Lambert's] email" to Regions until March 2008, but Kelley does not dispute that he and Lambert discussed the damage to the

12

property prior to February 5.  In addition, Kelley's engineer appears to have been copied on the email.  Kelley states that during the time that the Department was installing the utility lines, he was "concerned about the amount of damage that [the Department] was causing," but he claims that the Department "repeatedly assured [him] that they would restore the land to its original condition after their work was completed."  Kelley states that in February he "met with representatives of [the Department] to discuss additional work that remained to be done at the site."  He states that he spoke to Latch on February 19 and 25 or 26, 2008, and Latch "indicated that he would have to check with [Department] officials in regard to [Kelley's] request that  [the Department] repair the damage that it had caused, and restore the work site to [its prior] condition."  According to Kelley, in a March 2008 meeting, the Department's manager stated "that he was new in his position," so "he would have to review [the] situation, and get back to [Kelley] on when [the Department] would" repair the damage and restore the property.  Kelley states that "the first time any representative of [the Department] advised [him] that they were not going to do any additional work on the project" was at a meeting "in late March or early April of 2008."

¶23.    Actions under the MTCA must be commenced within one year of "the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based."  Miss. Code Ann. § 11-46-11(3)(a).  Thus, "the MTCA's one-year statute of limitations begins to run when the claimant knows, or by exercise of reasonable diligence should know, of both the damage or injury, *and the act or omission which proximately caused it*."  *Caves v. Yarbrough*, 991 So. 2d 142, 155 (¶54) (Miss. 2008) (emphasis added).

13

In this case, the gravamen of Kelley's claim is not that his property was damaged during the project. He admits that he observed such damage during the course of the project, but he also alleges that the Department repeatedly assured him that the property would be restored to its prior condition once they finished installing the utility lines. Kelley submitted an affidavit from Ricky Newcomb, the licensed professional engineer on his project, stating that standards and practices in the construction industry require a contractor such as the Department to "restore the land to its original condition after such work is completed." We understand this to be the gravamen of Kelley's negligence claim: the Department's failure to restore the property to its prior condition after the Department completed installation of the utility lines. *See Glover ex rel. Glover v. Jackson State Univ.*, 968 So. 2d 1267, 1276-77 (¶29) (Miss. 2007) ("The legal definition of negligence is fairly simple, universally applied, and . . . needs no citation of authority. Negligence is doing what a reasonable, prudent person would not do, or failing to do what a reasonable, prudent person would do, under substantially similar circumstances.").

¶24.    Presiding Judge Griffis's partial dissent says that the foregoing "logic is flawed . . . because industry standards do not create a duty and the failure to conform with industry standards does not create an independent basis for a negligence action." (Citing *Warren v. Pallets Inc.*, 747 So. 2d 875, 876-77 (¶18) (Miss. 1999)). We disagree with the partial dissent for two reasons. First, in making this argument, the partial dissent has gone beyond the statute of limitations issue properly before us to pass judgment on the merits of Kelley's negligence claim. The defendants did not move for summary judgment on the ground that

14

Kelley's negligence claim failed on the merits. Nor did the circuit court rule on that ground. It is doubtful that it could have done so without allowing any discovery.

¶25.    Second, *Warren* holds only industry standards are not an *independent* basis for a negligence claim if the defendants "owed *no* duty to [the plaintiff]" to begin with. *Warren*, 747 So. 2d at 878 (¶18). Here, however, the Department had a duty to perform its work in a non-negligent fashion. That being the case, industry customs can surely *inform* the duty of care in a negligence action. *See, e.g.*, *Dedeaux v. J.I. Case Co.*, 611 So. 2d 880, 886-87 (Miss. 1992); *Toliver v. Gen. Motors Corp.*, 482 So. 2d 213, 218 (Miss. 1985); *Rawson v. Midsouth Rail Corp.*, 738 So. 2d 280, 292 (¶42) (Miss. Ct. App. 1999). Therefore, the partial dissent's rejection of the *merits* of Kelley's negligence claim is not only procedurally improper but, at least at this early stage of the litigation, substantively mistaken.

¶26.    Thus, according to Kelley's affidavit, it was not until a meeting in late March or early April 2008 that the Department refused to restore the property to its prior condition. If that is true, then his notice of claim was timely served and his complaint timely filed. *See* Miss. Code Ann. § 11-46-11(3)(a).[8] Lambert's email to Regions may support an inference that the Department had made its position known by early February 2008, but on the record before us, that only serves to create a genuine issue of material fact regarding the date on which the

[8] The MTCA has a one-year statute of limitations, but, at the time Kelley's claim accrued and his complaint was filed, the "filing of a notice of claim . . . serve[d] to toll the statute of limitations . . . for one hundred twenty (120) days from the date" on which it was received by the political subdivision. Miss. Code Ann. § 11-46-11(3)(a) (Rev. 2002). In this case, the defendants have argued only that Kelley's notice of claim was filed more than one year after his claim accrued so that the 120-day tolling provision is unavailable to him. There is no separate argument with respect to the timeliness of the complaint, which was filed less than 120 days after the notice of claim.

15

claim accrued.  Accordingly, the defendants are not entitled to summary judgment on Kelley's tort claims based on the MTCA's statute of limitations.

### III.    Kelley's contract claim fails as a matter of law.

¶27.    Turning to Kelley's non-tort claims, the circuit court correctly held that Kelley's contract claim fails as a matter of law.  Kelley does not allege that the Department breached an express term of any written contract.  Nothing in the document setting out the timing of Kelley's payments or any related document contains any reference to restoring the property to its original condition.  Therefore, even if those documents constitute a contract of some sort, they are not a basis for Kelley's breach of contract claim.

¶28.    Rather than alleging a breach of an express provision of a written contract, Kelley alleges that the Department violated an "oral" agreement with him or an implied contractual duty to perform the work in a non-negligent fashion.  His claim that the Department violated an oral contract fails, as it is well-settled that alleged oral agreements with public bodies are unenforceable because a public body may enter a contract only through public action recorded in its minutes.[9]  Kelley argues that his contract need not be written or appear in the minutes of any public body because the Department does not keep minutes; however, as discussed above, the Department is merely an operating arm of the Commission.  By statute, the Commission "shall have the entire control and management of [the gas and water] systems" and the Department.  Miss. Code Ann. § 21-27-17 (Rev. 2015).  It follows that any

---

[9] *See, e.g.*, *Rawls Springs Util. Dist. v. Novak*, 765 So. 2d 1288, 1290-92 (¶¶4, 9-11) (Miss. 2000); *Thompson v. Jones Cty. Cmty. Hosp.*, 352 So. 2d 795, 795-98 (Miss. 1977); *Pike Cty., Miss. ex rel. Bd. of Supervisors v. Indeck Magnolia LLC*, 866 F. Supp. 2d 589, 591-92 (S.D. Miss. 2012).

contract with the Department is, in effect, a contract with the Commission and must be recorded in the minutes of the Commission.

¶29. In addition, the circuit court correctly ruled that Kelley's claim that the Department breached an implied contractual duty not to commit negligence fails to state a claim. The MTCA applies to any alleged "breach of [an] implied term or condition of any warranty or contract,"[10] and "[e]fforts to re-label tort suits as something else in order to avoid some part of the [MTCA] are ineffective."[11] Kelley can assert a negligence claim under the MTCA, but he cannot avoid the MTCA simply by renaming that claim. The circuit court correctly held that this claim is "simply a re-labeled tort claim."

**IV. Kelley's inverse condemnation claim fails as a matter of law.**

¶30. The circuit court also correctly granted summary judgment on Kelley's inverse condemnation claim. The third amended complaint contains no plausible allegation that the alleged damage to the property was for any "public use." Miss. Const. art. 3, § 17. "Not every tort committed by governmental entity that results in property damage gives rise to an action in inverse condemnation. Inverse condemnation is appropriate only when private property is taken or damaged in respect to public use or use for the public benefit." *Air Quality Prods. Inc. v. State*, 157 Cal. Rptr. 791, 797 n.7 (Cal. Ct. App. 1979).

---

[10] Miss. Code Ann. § 11-46-3(1); *see City of Jackson v. Estate of Stewart ex rel. Womack*, 908 So. 2d 703, 710-11 (¶¶35-38) (Miss. 2005).

[11] *Alexander v. Taylor*, 928 So. 2d 992, 995 (¶10) (Miss. Ct. App. 2006); *see* Miss. Code Ann. § 11-46-11(3)(d)(ii) ("The limitations period provided in this section controls and shall be exclusive in all actions subject to and brought under the provisions of [the MTCA], notwithstanding the nature of the claim [or] the label or other characterization the claimant may use to describe it . . . .").

**V. The circuit judge did not abuse his discretion by staying discovery.**

¶31. Finally, the circuit judge did not abuse his discretion by staying discovery.[12] "Issues of governmental immunity 'should be resolved at the earliest possible stage of litigation.'" *Bell*, 126 So. 3d at 1006 (¶21) (quoting *Hinds Cty. v. Perkins*, 64 So. 3d 982, 986 (¶11) (Miss. 2011)). Therefore, when such issues can be resolved without discovery, the trial court does not abuse its discretion by addressing "the immunity issues prior to delving further into the litigation process." *Id.* Staying discovery until such issues are resolved may, in appropriate cases, save defendant governmental entities, as well as claimants, considerable time and expense. In the present case, no additional discovery was needed to address the defendants' motion for summary judgment on those issues on which the circuit judge ruled. That we have reached a different result on one issue does not mean that it was an abuse of discretion to stay discovery until those issues were addressed.

**CONCLUSION**

¶32. The circuit court correctly ruled that all three defendants are political subdivisions entitled to the protections and immunities of the MTCA. However, because there is a genuine issue of material fact as to whether Kelley's notice of claim and complaint were filed within the MTCA's statute of limitations, we reverse and remand with respect to the tort claims that Kelley asserts that are not barred by sovereign immunity. *See supra* n.7. We affirm the circuit court's grant of summary judgment as to Kelley's contract claim, inverse

---

[12] We review such issues under an abuse-of-discretion standard. *Bell v. Miss. Dep't of Human Servs.*, 126 So. 3d 999, 1005 (¶16) (Miss. Ct. App. 2013).

18

condemnation claim, and those claims that are barred by sovereign immunity.[13]

¶33. **THE JUDGMENT OF THE ALCORN COUNTY CIRCUIT COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT AND ONE-HALF TO THE APPELLEES.**

**LEE, C.J., IRVING, P.J., AND ISHEE, J., CONCUR. FAIR, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES AND CARLTON, JJ. JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY FAIR, J.**

**GRIFFIS, P.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶34. I agree with the majority that the Department was a political subdivision subject to the MTCA. I further agree that Kelley's claims for breach of contract and inverse condemnation fail. The majority also correctly finds that the trial court did not abuse its discretion when it stayed discovery while determining the issue of immunity.

¶35. I write separately, however, because I disagree that a genuine issue of material fact exists regarding the statute of limitations. I agree with the trial court and am of the opinion that the statute of limitations began to run as of February 5, 2008. Accordingly, Kelley's

---

[13] On appeal, the defendants also argue that they are entitled to immunity under the MTCA because Kelley's claims arise out of the exercise of a discretionary function or discretionary allocation of resources. *See* Miss. Code Ann. § 11-46-9(1)(d) & (g) (Rev. 2012). In addition, the City of Corinth argues that it is entitled to summary judgment because Kelley's allegations are directed solely at the Commission and the Department. *But see Putt*, 579 So. 2d at 535 n.1 (noting that in that case "[n]o one challenge[d] the premise that authorized actions taken by officials and agents of the Commission and the Department are in law taken as well on behalf of the City of Corinth"). In the circuit court, the parties did not address these issues in any significant level of detail, and the court's order granting summary judgment did not address them at all. The present record is not adequately developed to address these issues, but the defendants may raise them again on remand.

notice-of-claims letter, dated February 19, 2009, fell outside the one-year statute of limitations.

¶36. "All actions brought under [the MTCA] shall be commenced within one (1) year next after the date of the tortious, wrongful[,] or otherwise actionable conduct on which the liability phase of the action is based[.]" Miss. Code Ann. § 11-46-11(3)(a) (Rev. 2012). "[T]he statute of limitations for claims thereunder begins to run when all the elements of a tort, or cause of action, are present." *Caves v. Yarbrough*, 991 So. 2d 142, 147 (¶22) (Miss. 2008).

¶37. Kelley claims that the statute of limitations does not begin to run until at least after February 21, 2008. Kelley bases this assertion on the fact that the Department last sent workers to the property on February 21, 2008, and that he received assurances that the Department would repair the damage to the property after this date. The record, however, indicates that the Department last sent workers for the installation on January 24, 2008. Further, Lambert stated in his email that the installation of the water and gas lines was completed as of his February 1, 2008 visit even though the Department had failed to repair the damage caused by the installation.

¶38. The majority contends "that the Department's failure to restore the property to its prior condition after the Department completed installation of the utility lines" is the gravamen of Kelley's claims. As such, the majority contends, Kelley's claims accrued once the Department informed Kelley that it would not make any further repairs as of March or April 2008. The majority's interpretation of the basis of Kelley's claims relies on the proposition

20

that Kelley's cause of action stems from the Department's failure to restore the land in compliance with industry standards. As the majority correctly pointed out, however, Kelley and the Department did not have a valid contract. Therefore, a claim for the Department's failure to make repairs could not arise as a breach-of-contract claim, but would have to arise out of a negligence claim. Following this logic, the industry standard would then have to create a duty that the Department breached by failing to make repairs.

¶39. This logic is flawed, however, because industry standards do not create a duty and the failure to conform with industry standards does not create an independent basis for a negligence action. *See Warren v. Pallets Inc.*, 747 So. 2d 875, 877-78 (¶18) (Miss. Ct. App. 1999) (finding a logging industry standard did not create a duty from which an independent tort could arise). Therefore, Kelley's claims necessarily arise from the damage itself as well as the negligent work of the Department. As such, the accrual of Kelley's claims began once Kelley knew of the damage and the Department's substandard work.

¶40. Kelley stated that during the time that the Department was installing the utility lines, he was "concerned about the amount of damage that [the Department] was causing[.]" Further, Lambert's email indicated that while the installation of the water and gas lines was complete, the property suffered from extensive damage as of February 1, 2008. Though Kelley denies he had personal knowledge of the email when it was originally sent, Newcomb, Kelley's engineer, received notice of the email on February 5, 2008, which imputes notice to Kelley. *See Lane v. Oustalet*, 873 So. 2d 92, 95-96 (¶15) (Miss. 2004) ("The law of agency generally imputes knowledge and information received by an agent in conducting the

21

business of a principal to the principal, even where that knowledge or information is not communicated by the agent to the principal.") Therefore, Kelley's observation coupled with Lambert's email indicates Kelley knew of the damage and the Department's negligent work as of February 5, 2008, or before.

¶41. The majority contends this analysis goes "beyond the statute of limitations issue properly before us" and passes judgment on the merits of Kelley's claims. This contention is incorrect. This analysis only goes into the determination of the basis of Kelley's claims in order to decide when the claims properly accrued for statute-of-limitations purposes, not whether Kelley's claims are meritorious or not. I agree with the majority that "the Department had a duty to perform its work in a non-negligent fashion." But the Department's failure or compliance with that duty was apparent as of the February 5, 2008 email that detailed the problems with the work site. This determination does not reject Kelley's negligence claims, as the majority argues, but merely establishes the earliest known point of the Department's actions that Kelley complains of.

¶42. For these reasons, I agree with the trial court and find that Kelley's claims accrued and the statute of limitations began to run as of February 5, 2008. Therefore, Kelley's claims are barred.

**BARNES AND CARLTON, JJ., JOIN THIS OPINION.**

**JAMES, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶43. I agree with the majority's opinion that genuine issues of material fact regarding the date of accrual of Kelley's claim under the Mississippi Tort Claims Act (MTCA) preclude

22

summary judgment on that claim. However, I dissent from the remaining parts of the majority opinion. I would find that the following questions on appeal involve genuine issues of material fact and that it was error to grant summary judgment: (1) whether the trial court erred in dismissing Kelley's breach-of-contract claim; (2) whether the trial court erred in finding that the Department was a political subdivision and, therefore, was afforded the protections of the MTCA; (3) whether the trial court erred in failing to allow any discovery for any of the issues presented in this case; and (4) whether the trial court erred in dismissing Kelley's claim of inverse condemnation. I also would find that the trial court abused its discretion in staying discovery, which precludes this case from being ripe for appellate review. Finding error, I would reverse and remand these four issues for further proceedings.

## DISCUSSION

### I. Whether the trial court erred in finding that the Department was a political subdivision and, therefore, was afforded the protections of the MTCA.

¶44. Kelley contends that the trial court erred in determining that the Department was a political subdivision that was protected by the MTCA. Kelley argues that the Department was an independent contractor that submitted a bid to install utilities on private property. As a result, Kelley asserts that in this particular set of circumstances, the Department behaved like a private contractor and should be treated as such. I agree.

¶45. The MTCA "provides the exclusive civil remedy against a governmental entity or its employee for acts or omissions which give rise to a suit. Any tort claim filed against a government entity or its employee shall be brought only under the MTCA." *Watts v. Tsang*,

23

828 So. 2d 785, 791 (¶17) (Miss. 2002). "A governmental entity is defined as the state and political subdivisions as herein defined." *Bolivar Leflore Med. Alliance LLP v. Williams*, 938 So. 2d 1222,1226 (¶14) (Miss. 2006). A political subdivision is defined by statute as:

> [A]ny body politic or body corporate other than the state responsible for governmental activities only in geographic areas smaller than that of the state, including, but not limited to, any county, municipality, school district, charter school, volunteer fire department that is a chartered nonprofit corporation providing emergency services under contract with a county or municipality, community hospital as defined in Section 41-13-10, airport authority, or other instrumentality of the state, whether or not the body or instrumentality has the authority to levy taxes or to sue or be sued in its own name.

Miss. Code Ann. § 11-46-1(i) (Supp. 2015).

¶46. "[A] private corporate entity which is responsible for governmental activities may properly be regarded as a political subdivision under [section] 11-46-1(i)." *Bolivar*, 938 So. 2d at 1227 (¶14). Further, the supreme court has stated that "[g]overnmental actions under the MTCA are those which are performed pursuant to the act of statute or are a matter of public necessity." *Spencer v. Greenwood/Leflore Airport Auth.*, 834 So. 2d 707, 711 (¶12) (Miss. 2003) (citing *Thomas v. Hilburn*, 654 So. 2d 898, 900 (Miss. 1995)). And we have previously held that "[a] state entity does not lose its status under the [MTCA] by merely contracting with a private entity." *Allstadt v. Baptist Mem'l Hosp.*, 893 So. 2d 1083, 1087 (¶16) (Miss. Ct. App. 2005). However, Kelley argues that since the Department entered into a contract with a private entity, under the unique circumstances of this case, the Department was no longer a political subdivision under the protection of the MTCA.

¶47. In *Allstadt* this Court was able to examine the contract's language to determine the relationship between the contracting parties, but here the Defendants argue that there was no

24

contract.  *Id.* at 1086 (¶13).  We also noted in *Allstadt* that language in a contract could have been convincing enough to create a private entity, causing a state entity to be deemed private.  *Id.* at 1087 (¶16).  On the record before us, I cannot determine whether the Department acted as a private entity and an independent contractor in the construction and installation of the utility lines.  I also cannot determine what the parties agreed upon regarding the construction and installation of the utility lines.

¶48.    The function of the Department is to provide utilities, specifically gas and water, which are considered "a matter of public necessity," to the City of Corinth.  The Department is governed by the Commission, which "controls, manages[,] and operates the natural gas and water distribution systems for the City of Corinth."  However, there is nothing in the bylaws of the Commission that authorizes the Department to act as a private contractor for the *installation* of new utility services on private property.  (Emphasis added).  Likewise, the mission statement of the Commission includes the control, management, and operations of the gas and water distribution systems, but it does not include the construction or installation of the systems.

¶49.    Kelley was informed that the Department was initiating a new program to compete with private construction contractors for the installation of utility services.  Kelley accepted the low bid submitted by the Department after receiving bids from two other private construction contractors.  I would find there is a genuine issue of material fact as to whether the Department departed from its stated function of providing utilities, specifically gas and water, to the City of Corinth when it constructed and installed the water lines on Kelley's

25

property following the bidding process. *See Poppenheminer v. Estate of Coyle*, 98 So. 3d 1059, 1068 (¶29) (Miss. 2012) (holding that despite providing valuable services to its community, a volunteer fire department was a private entity and an independent contractor not clothed with immunity under the MTCA). Additional discovery will allow the trial court to properly determine whether the Department is protected under the MTCA as a political subdivision when acting in this alternate capacity.

**II.    Whether the trial court erred in dismissing Kelley's breach-of-contract claim.**

¶50.    I do not agree with the trial court's determination that Kelley's breach-of-contract claim was merely a relabeled tort claim. Kelley's claim stems from the Department's alleged breach of a construction agreement. Under Rule 8 of the Mississippi Rules of Civil Procedure, Kelley may state as many separate claims as he has, regardless of consistency. *Jordan v. Wilson*, 5 So. 3d 442, 447-48 (¶19) (Miss. Ct. App. 2008). In *Alexander v. Taylor*, 928 So. 2d 992, 995-96 (¶10) (Miss. Ct. App. 2006), we stated:

> It is self-evident that only those suits "subject to" the [MTCA] are controlled by that Act's statute of limitations. Efforts to re-label tort suits as something else in order to avoid some part of the Act are ineffective, as this quoted language indicates. Yet that is not the same thing as a statutory assertion that there are no suits other than in tort that can be brought against governmental offices and officials.

Thus, Kelley's breach-of-contract claim may not be subject to the MTCA. The MTCA does not apply to pure contract actions because entering into a contract waives sovereign immunity from suits brought to enforce the contract. *Montgomery v. Mississippi*, 498 F. Supp. 2d 892, 905 (S.D. Miss. 2007).

26

¶51. Kelley contends that a valid, binding contract existed between himself, the Department, the Commission, and the City. In order to establish a breach-of-contract claim, "the plaintiff must prove by a preponderance of the evidence: (1) the existence of a valid and binding contract, (2) the defendant has breached the contract, and (3) the plaintiff has been damaged monetarily." *Suddith v. Univ. of S. Miss.*, 977 So. 2d 1158, 1175 (¶35) (Miss. Ct. App. 2007). In order for a valid contract to exist, the following elements must be present: "(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *Rotenberry v. Hooker*, 864 So. 2d 266, 270 (¶13) (Miss. 2003).

¶52. The Department admitted in its answer to Kelley's third amended complaint that there was a written agreement with Kelley for the installation of water lines in Magnolia Lake Estates. Taking Kelley's assertions as true, I would find that each element of a valid and enforceable contract is present. However, the Defendants argue that because the contract was not entered into the minutes of the Commission, there was no valid contract and thus no breach of contract.

¶53. "It is a fundamental and inviolable policy of the State of Mississippi that the exclusive means by which a county government may enter a contract or amend or alter any contract entered by the county is through public action by the county's board of supervisors, which action must be evidenced by an entry on its minutes." *Pike Cty. v. Indeck Magnolia LLC*, 866 F. Supp. 2d 589, 591 (S.D. Miss. 2012). It has also been determined by the supreme

court that the board of a utilities district is a "public corporation and a body politic," and, as such, the general rule that a board of supervisors may "act only through its minutes" applies to it as well. *Rawls Springs Util. Dist. v. Novak*, 765 So. 2d 1288, 1291 (¶10) (Miss. 2000). "This requirement applies not only to contract formation, but to contract modification as well." *Urban Developers LLC v. City of Jackson, Miss*., 468 F.3d 281, 299 (5th Cir. 2006). However, the supreme court has also stated that "a contract with a public board may be enforced if enough of the terms and conditions of the contract are contained on the minutes." *Rawls Springs Util. Dist*., 765 So. 2d at 1291 (¶10).

¶54. Here, the Commission's minutes on July 9, 2007, confirm the receipt of $82,000 from Kelley as the initial payment for "aid of construction for water installation." This supports Kelley's claim that a valid and enforceable contract was entered into by the Department. Indeed, the Department, which was self-proclaimed as a "not-for-profit" entity, does not keep minutes, so obviously a contract is not reflected in minutes that do not exist. Again, it is admitted by the Department that it had an agreement with Kelley to install the water lines. Conversely, the Department's argument that no contract exists because no express contract is reflected in any minutes may be construed as evidence that the Department was acting outside its function as a political subdivision and arm of the Commission when it submitted a bid and later constructed and installed the water lines on Kelley's property. I would find that there is a genuine issue of material fact regarding whether there was a valid and enforceable contract between these parties.

III. **Whether the circuit court erred in failing to allow any discovery on any of the issues presented in this case.**

¶55. Kelley argues that the trial court erred in staying all the discovery in this case. I agree. Kelley submitted discovery requests to the Defendants with the initial complaint. Here, Kelley submitted discovery and received limited responses. The Defendants requested an extension of time to respond to Kelley's discovery, and in lieu of answering the discovery, filed their initial motion for summary judgment as well as a motion to stay discovery.

¶56. The standard of review "of a trial court's management of the [pretrial] discovery process is abuse of discretion." *Partin v. N. Miss. Med. Ctr. Inc.*, 929 So. 2d 924, 938 (¶57) (Miss. Ct. App. 2005) (citing *Bowie v. Montfort Jones Mem'l Hosp.*, 861 So. 2d 1037, 1042 (¶14) (Miss. 2003)). Mississippi Rule of Civil Procedure 26(b)(1) provides:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the issues raised by the claims or defenses of any party. The discovery may include the existence, description, nature, custody, condition and location of any books, documents, electronic or magnetic data, or other tangible things; and the identity and location of persons (i) having knowledge of any discoverable matter or (ii) who may be called as witnesses at the trial. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

¶57. Moreover, "the party resisting summary judgment must present specific facts why he cannot oppose the motion and must specifically demonstrate 'how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" *Grant v. Ford Motor Co.*, 89 So. 3d 655, 674-75 (¶36) (Miss. Ct. App. 2012).

¶58. Kelley made an attempt to obtain information that was in the control of the Defendants to defend against the summary-judgment motion, namely to determine whether

29

the Department was acting as an independent contractor and private entity. For instance, it was not until after the hearing on the competing motions for summary judgment, that Kelley received the bylaws of the Commission. Kelley was not afforded an adequate opportunity to conduct meaningful discovery. The order staying discovery significantly impeded Kelley's ability to defend against the motion for summary judgment, as much of the information relevant to his claims was in the exclusive control of the Defendants. Therefore, I would find that the trial court abused its discretion in refusing to lift the stay of discovery.

**IV. Whether the trial court erred in dismissing Kelley's claim of inverse condemnation.**

¶59. Finally, Kelley argues that the trial court erred in dismissing his inverse-condemnation claim. Kelley argues that the Defendants are responsible for compensating him for the damages caused to his private property under the doctrine of inverse condemnation. Article 3, Section 17 of the Mississippi Constitution provides:

> Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public.

¶60. The Mississippi Supreme Court has held that "Section 17 is not applicable except where private property is taken for public use by public authorities." *Bradley v. Tishomingo Cty.*, 810 So. 2d 600, 603 (¶13) (Miss. 2002). The trial court determined that Kelley's inverse-condemnation claim was not applicable because there was no evidence that any eminent-domain or condemnation action was commenced by the Defendants against Kelley

30

or his property. However, the taking or damaging of property without a formal eminent-domain or condemnation action is exactly what an inverse-condemnation claim is based on.

> Inverse condemnation[] has been characterized as an action or eminent domain proceeding initiated by the property owner, rather than the condemnor, and has been deemed to be available where private property has been actually taken for public use without formal condemnation proceedings and where it appears that there is no intention or willingness of the taker to bring such proceedings.

*Jackson Mun. Airport Auth. v. Wright*, 232 So. 2d 709, 713 (Miss. 1970).

¶61. The majority states that there is no evidence that Kelley's property was taken or damaged for any form of public use. Certainly, the lines were installed with the ultimate purpose of providing public utilities, specifically gas and water, to households in the City of Corinth. I would find that Kelley has alleged sufficient facts that preclude the grant of summary judgment on this issue and reverse the grant of summary judgment on this issue.

## CONCLUSION

¶62. I agree with the majority that genuine issues of material fact preclude the grant of summary judgment on Kelley's claim under the MTCA. However, I would find the issues of whether the Department was a political subdivision; whether the MTCA applies to the Department, Commission, and City; whether a contract exists; and whether the doctrine of inverse condemnation is applicable involve genuine issues of material fact that preclude the granting of summary judgment in favor of the Defendants. I would also find that the trial court abused its discretion in staying discovery because Kelley was denied any meaningful opportunity to defend against the Defendants' motion for summary judgment. Accordingly, I would reverse and remand this case for further proceedings.

31