# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CP-01590-COA

STEVEN A. DELOGE                                        APPELLANT

v.

DESOTO COUNTY SHERIFF'S DEPARTMENT,                     APPELLEES
SHERIFF BILL RASCO, IN HIS OFFICIAL
CAPACITY, AND LENT RICE, DIRECTOR OF
INTERNAL AFFAIRS, IN HIS OFFICIAL
CAPACITY

| | |
|---|---|
| DATE OF JUDGMENT: | 08/25/2015 |
| TRIAL JUDGE: | HON. MITCHELL M. LUNDY JR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | STEVEN A. DELOGE (PRO SE) |
| ATTORNEY FOR APPELLEES: | ROBERT E. QUIMBY |
| NATURE OF THE CASE: | CIVIL - OTHER |
| TRIAL COURT DISPOSITION: | GRANTED DESOTO COUNTY SHERIFF'S DEPARTMENT'S MOTION TO DISMISS |
| DISPOSITION: | AFFIRMED - 03/14/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., ISHEE AND GREENLEE, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1.    Steven DeLoge appeals the decision of the DeSoto County Chancery Court to grant the DeSoto County Sheriff's Department's (DCSD) motion to dismiss for failure to state a claim upon which relief can be granted.  Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    DeLoge is currently serving six consecutive life sentences in Wyoming for the sexual abuse of a minor.  In February 1999, DeLoge resided with Katherine Lowery in Olive

Branch, Mississippi. Lowery disappeared around that date and was last known to reside in Olive Branch. DeLoge departed from Mississippi with Lowery's children. He was arrested in November 1999 in Cheyenne, Wyoming, for sexually abusing Lowery's eight-year-old daughter, to which he pleaded guilty and was sentenced to serve six life sentences. Following his guilty plea, evidence that had been collected by Wyoming officials and the FBI was forwarded to DCSD to assist in its investigation of the disappearance of Lowery, in which DeLoge was a suspect. The investigation into Lowery's disappearance is ongoing.

¶3. In 2013, DeLoge submitted a public-records request under the Mississippi Public Records Act (the Act) to DCSD, seeking records to indicate the physical location, itemized inventory, chain of custody, current condition, and status of all property and evidence obtained or transferred to DCSD from Wyoming. DCSD responded to the public-records request with an inventory sheet provided to it by the FBI and informed DeLoge that the items were in DCSD's evidence-storage room. DCSD further advised DeLoge that under the Act, they were not subject to production of the documents and items because the missing-person investigation of Lowery was still in active status.

¶4. DeLoge filed a public-opinion request with the Mississippi Ethics Commission pursuant to Mississippi Code Annotated section 25-61-13(1)(b) (Rev. 2010), inquiring whether DCSD's denial of the production request was compliant with the Act. In October 2013, the Mississippi Ethics Commission found that the records sought by DeLoge were investigative reports under Mississippi Code Annotated section 25-61-3(f) (Rev. 2010) and thus exempted from production under Mississippi Code Annotated section 25-61-12 (Rev.

2010).

¶5.     DeLoge then filed a complaint against DCSD in the DeSoto County Chancery Court, arguing DCSD improperly denied his request for information, requesting declaratory and injunctive relief, and seeking a de novo review of the Ethics Commission's opinion. DCSD moved to dismiss DeLoge's complaint pursuant to Mississippi Rule of Civil Procedure 12(b)(6), arguing that DeLoge failed to state a claim for which relief could be granted because the documents sought by DeLoge fall within an exemption of the Act, as they are investigative in nature and directly related to an open criminal investigation.

¶6.     On May 4, 2015, the chancery court heard arguments from DCSD and DeLoge on the motion to dismiss. DeLoge was present by telephone. DCSD argued that all of the documents and property were investigative in nature and exempt from production under the Act. DeLoge argued that the documents and items in DCSD's possession were not investigative in nature. He instead argued that the documents and items were exculpatory in nature, and that their production was necessary to pursue his appeal in Wyoming. On May 5, 2015, the chancery court granted DeLoge's motion for an in camera review to determine whether the disputed documents and items were investigative and thus exempt under the Act. The review was conducted on June 29, 2015.

¶7.     The chancery court issued its final ruling on August 24, 2015. The court gave a report of the in camera inspection and noted that all of the documents in the possession of DCSD had been reviewed for their relevance and necessity in the open investigation of a missing person. A complete transcript of the review was made and included as part of the certified

record on appeal. The chancery court stated that upon review, it could not make the determination that the documents and items were not relevant—as DeLoge argued—to the missing-person investigation in DeSoto County. For that reason, the court granted DCSD's motion to dismiss. The chancery court's order dismissing DeLoge's complaint specifically stated:

> This action came on to be heard on August 24, 2015, on the [DCSD's] Joint Motion to Dismiss (Doc. 5). As requested by Mr. DeLoge, the Court conducted an in camera review of the numerous boxes of documents in the [DCSD's] possession for their relevance to an open investigation of a missing person in which Steven DeLoge is a suspect. The Court cannot in good conscience hold that the documents Mr. DeLoge seeks are not relevant to Defendants' open investigation. Therefore, the motion is well[]taken at this time and should be granted.
>
> IT IS, THEREFORE, ORDERED, ADJUDGED and DECREED that the Joint Motion to Dismiss is granted.

¶8. It is from this order that DeLoge now appeals. We have condensed his issues as follows: (1) whether the chancery court erred when it did not convert DCSD's motion to dismiss to a summary-judgment proceeding; (2) whether the chancery court erred when it granted DCSD's motion to dismiss; and (3) whether DeLoge's constitutional rights were violated.

## STANDARD OF REVIEW

¶9. A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted presents questions of law, which an appellate court reviews de novo. *Covington Cty. Bank v. Magee*, 177 So. 3d 826, 828 (¶5) (Miss. 2015) (citing *City of Belmont v. Miss. State Tax Comm'n*, 860 So. 2d 289, 295 (¶10) (Miss. 2003)). "Rule 12(b)(6)

4

motions are decided on the face of the pleadings alone." *Covington*, 177 So. 3d at 828 (¶5) (quoting *State v. Bayer Corp.*, 32 So. 3d 496, 502 (¶21) (Miss. 2010)). "On a motion to dismiss, 'the allegations in the complaint must be taken as true, and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim.'" *Id.* (quoting *Belmont*, 860 So. 2d at 295 (¶10)).

## DISCUSSION

### I. Motion to Dismiss Not Converted to Summary-Judgment Proceeding

¶10. DeLoge contends that the chancery court erred when it granted DCSD's motion to dismiss because the court considered matters outside the pleadings during the in camera review of documents submitted by DCSD. Specifically, he contends that the ruling is erroneous because the chancery court failed to convert the motion to a Mississippi Rule of Civil Procedure 56 summary-judgment proceeding and allow DeLoge to engage in further fact-finding or leave to amend his complaint.

¶11. It is true that "[w]hen presented with a Rule 12(b)(6) motion, there is only one way for the trial court to consider evidence outside the pleadings—converting the 12(b)(6) motion into a motion for summary judgment." *Williams v. Mueller Copper Tube Co.*, 149 So. 3d 527, 529 (¶5) (Miss. Ct. App. 2014). "[C]onversion must be explicit[.]" *Id.* "Whenever a trial judge converts a Rule 12(b)(6) motion to dismiss into one for summary judgment by considering matters outside the pleadings, the judge *must* give all parties ten days' notice that he is converting the motion." *Id.* (quoting *Delta MK LLC v. Miss. Transp. Comm'n*, 57 So. 3d 1284, 1289 (¶13) (Miss. 2011)).

¶12. In *Breeden v. Buchanan*, 164 So. 3d 1057, 1068 (¶53) (Miss. Ct. App. 2015), we acknowledged "that a motion to dismiss for failure to state a claim limits the matters that the trial court may consider." However, we further held that "the court may certainly consider the contents of the complaint, the documents attached to the complaint, and the *documents that are referred to in the complaint if they are central to the plaintiff's claim, even though they are not attached to the complaint*." *Id.* (emphasis added).

¶13. Here, the chancery court granted DCSD's motion to dismiss after its in camera review of the documents and items submitted by DCSD. The chancery court's review of this evidence was not outside of the pleadings. Rather, the documents and items considered by the chancery court during its in camera review were as *Breeden* stated: "documents that [were] referred to in the complaint [that were] central to the plaintiff's claim, even though they [were] not attached to the complaint." *Id*. Furthermore, the review was conducted at the request of DeLoge pursuant to his complaint that these items were central to his claim. Accordingly, the chancery court did not err by not converting DCSD's motion to dismiss to a summary-judgment proceeding. This issue is without merit.

## II. Motion to Dismiss

¶14. We now turn to whether the chancery court erred in granting DCSD's motion to dismiss. As we have stated, a motion to dismiss for failure to state a claim is a question of law, which we review de novo. *Covington*, 177 So. 3d at 828 (¶5). The instant case required the chancery court to determine whether the documents at issue were investigative prior to ruling on DCSD's motion to dismiss. Whether documents "constitute an 'investigative

6

report' . . . is a question of fact[,] which must be answered on a case-by-case basis." Miss. Att'y Gen. Op., 2010-00381, 2010 WL 4105478, *Janous* (Sept. 8, 2010). As such, this case presents a mixed question of law and fact for our review. "[P]roper review of mixed questions of law and fact require that the . . . court's 'factual findings be reviewed for clear error[,] and that its interpretation of the law be reviewed de novo.'" *Burgess v. Patterson*, 188 So. 3d 537, 547 (¶31) (Miss. 2016) (quoting *Hewes v. Langston*, 853 So. 2d 1237, 1241 (¶13) (Miss. 2003)).

### A. Chancery Court's Findings of Fact

¶15. Here, the chancery court determined that the documents and items that DCSD asserted were exempt from production were, in fact, investigative. When DCSD asserted that the items were investigative, and DeLoge averred that they were not, the court found DeLoge's motion for an in camera review well taken. Our examination of the record shows that the chancery court, during the in camera review, thoroughly examined all of the records, items, and documents in DCSD's possession. Further, the court inquired to DCSD about the relevance and potential evidentiary value of each item to the ongoing investigation of a missing person in which DeLoge was a suspect. After the in camera review, the court ruled that it could not find that the items would not be relevant to DCSD's open investigation of a missing person and granted DCSD's motion to dismiss. Upon our review, we do not find that the chancery court's factual finding that the items and documents were investigative was clearly erroneous or manifestly wrong. Therefore, we affirm.

### B. Chancery Court's Findings of Law

7

¶16. The chancery court dismissed DeLoge's complaint under Rule 12(b)(6)—failure to state a claim upon which relief can be granted. DeLoge sought the production of the items and documents in DCSD's possession under the Act. Mississippi Code Annotated section 25-61-2 (Rev. 2010) provides, "It is the policy of this state that public records shall be available for inspection by any person unless otherwise provided by this [Act]."

¶17. It is undisputed that DCSD is a "public body" and that the documents and items at issue in this appeal are "public records" within the meaning of the Act. *See* Miss. Code Ann. § 25-61-3(a), (b). But the Act provides a specific exemption for investigative reports: "When in the possession of a law enforcement agency, investigative reports shall be exempt from the provisions of this chapter . . . ." Miss. Code Ann. § 25-61-12(2)(a) (Rev. 2010).

¶18. The Act defines "investigative report," in part, as follows:

(f) "Investigative report" means records of a law enforcement agency containing information beyond the scope of the matters contained in an incident report, and generally will include, but not be limited to, the following matters if beyond the scope of the matters contained in an incident report:

(i) Records that are compiled in the process of detecting and investigating any unlawful activity or alleged unlawful activity, the disclosure of which would harm the investigation which may include crime scene reports and demonstrative evidence;

. . . .

(iii) Records that would prematurely release information that would impede the public body's enforcement, investigative or detection efforts;

(iv) Records that would disclose investigatory techniques and/or results of investigative techniques;

. . . .

8

> (viii) Records that would impede or jeopardize a prosecutor's
> ability to prosecute the alleged offense.

Miss. Code Ann. § 25-61-3.

¶19. Here, the chancery court determined that the documents and items within DCSD's possession were investigative. As such, they were exempted under the Act from production. It follows that DeLoge's complaint, which states DCSD improperly denied his request for information and production, fails to state a claim upon which relief can be granted. Accordingly, the chancery court did not err in granting DCSD's motion to dismiss. This issue is without merit.

### III. Violation of DeLoge's Constitutional Rights

¶20. DeLoge also contends that his constitutional rights were violated by DCSD's retention of the documents and items at issue. "Property seized under a search warrant is an exercise of the police power of the [S]tate, and the [S]tate has the authority to keep and maintain control of the property until it is no longer needed in a criminal prosecution or investigation." *Kea v. Keys*, 83 So. 3d 399, 405 (¶15) (Miss. Ct. App. 2011) (quoting *Newman v. Stuart*, 597 So. 2d 609, 614 (Miss. 1992)). Here, the documents and items at issue were seized under a search warrant issued in Wyoming and were transferred to DCSD only at the close of the Wyoming case against DeLoge. DCSD has the authority to keep and maintain control of the property until it is no longer needed in the investigation, which is still ongoing. DeLoge also argues that his constitutional rights were violated because he was not present when the chancery court announced its ruling on August 24, 2015. "The Confrontation Clause of the Sixth Amendment guarantees that '[i]n all *criminal* prosecutions, the accused shall enjoy the

right . . . to be confronted with the witnesses against him.'" *Corbin v. State*, 74 So. 3d 333, 337-38 (¶13) (Miss. 2011) (quoting *Davis v. Washington*, 547 U.S. 813, 821 (2006)). This was a civil action in which DeLoge was the plaintiff—not a criminal action in which he was the defendant. Therefore, the Confrontation Clause is not implicated so as to require DeLoge's presence. Furthermore, the chancery court did not hear any testimony at the hearing. The court merely announced its ruling on the motion to dismiss.

¶21. **THE JUDGMENT OF THE DESOTO COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**