# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-00207-COA

| | |
|---|---|
| **DEBRA GREEN** | **APPELLANT** |

**v.**

| | |
|---|---|
| **SINGING RIVER HEALTH SYSTEM** | **APPELLEE** |

DATE OF JUDGMENT:                01/16/2019
TRIAL JUDGE:                            HON. JAMES D. BELL
COURT FROM WHICH APPEALED:  JACKSON COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:      WALTER C. MORRISON IV
                                              TIM C. HOLLEMAN
ATTORNEYS FOR APPELLEE:        BRETT K. WILLIAMS
                                              A. KELLY SESSOMS III
                                              JAMES EVERETT LAMBERT III
                                              JASON R. SCHEIDERER
NATURE OF THE CASE:              CIVIL - MEDICAL MALPRACTICE
DISPOSITION:                          REVERSED AND REMANDED - 11/05/2019
MOTION FOR REHEARING FILED:   11/19/2019 - DENIED; REVERSED AND
                                              REMANDED - 02/04/2020
MANDATE ISSUED:

    **EN BANC.**

    **McDONALD, J., FOR THE COURT:**

    **MODIFIED OPINION ON MOTION FOR REHEARING**

¶1.     The motion for rehearing is denied.  The original opinion is withdrawn, and this modified opinion is substituted in its place.

¶2.     In November 2016, Singing River Hospital (Singing River) sent letters to patients who were treated for multiple sclerosis by its employee, Dr. Terry Millette (Millette).  The letter said that there had been questions about Millette's patient care and that re-evaluations of his patients were needed.  After Debra Green (Green) was reevaluated in May 2017 and learned

she did not have multiple sclerosis, she sent a notice of claim to the hospital in January 2018. On May 29, 2018, she filed a medical negligence suit against the hospital seeking damages. Singing River, a Mississippi Tort Claims Act (MTCA)[1] entity, filed a motion to dismiss the action, which the circuit court granted. It held that Green failed to file suit within the statutorily prescribed time limit, calculating the one-year limitations period to have begun running on November 16, 2016, the date of Singing River's letter to Millette's patients. Green appeals, and after consideration of the law and the parties' arguments, we reverse the court's judgment and remand.

## Facts

¶3. Green had been Millette's patient for many years, both when he was in private practice and after he became an employee of Singing River in 2011. Over the years, she was diagnosed with spasmodic torticollis, a neurological disorder, for which she received Botox treatments. In August 2015 she reported to the nurse practitioner in Millette's clinic at Singing River that she was falling frequently, that her gait had become more unsteady, and that her memory was not as sharp as it had been. An MRI was scheduled. After the MRI, Green saw another nurse practitioner in the clinic who documented symptoms of memory loss, unsteady gait, and blurred vision. Her MRI revealed multiple white-matter lesions in both hemispheres of her brain. This finding resulted in a diagnosis of probable multiple sclerosis, and medication to treat it was prescribed. She began having daily injections of Copaxone in addition to her other medication. She saw Millette in November 2015 when he

---

[1] Miss. Code Ann. §§ 11-46-1 to -23. (Rev. 2019).

determined that she had possible demyelinating syndrome (a disease damaging the protective covering of the nerve fibers, which includes multiple sclerosis). Thereafter, Millette continued prescribing medications consistent with her multiple sclerosis diagnosis.

¶4. Unbeknowst to Green, three doctors communicated to hospital officials their concerns about Millete's pattern of diagnosis and/or treatment that they felt may be inappropriate. In a memo dated May 10, 2016, these doctors acknowledged that medicine is not an exact science and that approaches to diagnosis and treatment may differ among doctors. However, they said their concern "goes beyond diagnostic error or uncertainty that we feel would be expected. . . ." They attached a sampling of medical records for the hospital to review and reiterated that "this communication does not serve to accuse any individual of wrongdoing." They did not ask that any action be taken against Millette. It is unclear what specific actions Singing River took in response to this memo, but ultimately it did result in Millette's separation from the hospital and a letter being sent to his patients, including Green.

¶5. The November 16, 2016 letter reads in pertinent parts:

> As a valued patient of Singing River Health System, your health and well-being—and that of all our patients—are our highest priority. As such, we want to share with you that Dr. Terry Millette will no longer be practicing at the Neurology Associates Clinic at Singing River Medical Park effective immediately.

> . . . [W]e want to share with you the circumstances surrounding Dr. Millette's departure and our plan for moving forward with our patients.

> Consistent with best medical practice, Singing River has internal processes to review the quality of care that our patients receive. Recently some questions were raised about how Dr. Millette diagnoses and treats patients with multiple sclerosis. As a result, we immediately began a review of Dr. Millette's medical activity. During the course of this *ongoing review*, the decision was made that

3

Dr. Millette would no longer base his practice at Singing River.

We recognize that competent medical professionals often have differing opinions, especially when it involves complex neurological conditions. Given the questions that have been raised about Dr. Millette's medical practices, we would like to work with you to obtain a re-evaluation of your diagnosis and treatment plan with another doctor.

As a next step, we ask you or your caregiver to call us at (228) 809-2000. You will be able to reach a dedicated team of Singing River employees at that number seven days a week from 6:00 AM to 10:00 PM.

We are working closely with regional and national experts in neurology to assist you in the best manner possible during this transition to a new doctor. We are here to help you during every step of this process and, when you call, we can discuss your options for a re-evaluation of your care as well as any questions you may have. . . .

(Emphasis added).

¶6.    According to Singing River, it also released an announcement to the press concerning the matter.  Dated November 17, 2016, the press release contained much of the same information as that in the patient letter.  It noted that the hospital had an internal process of review where some questions were raised about Millette's diagnosis and treatment of patients with multiple sclerosis.  As a result, the decision was made that Millette would no longer be allowed to practice at Singing River.  The press release went on to say that Singing River was working with regional and national experts to "ensure the best possible transition" of its patients' medical care.

¶7.    The hospital also sent a memo to the "Patient Hotline Staff" with instructions about how to handle calls received in response to the patient letter.  The memo provided a script of potential questions and answers that should be given.  These included: "How did this

4

happen?"; "Who is going to take care of me now?"; "Should I keep taking the medications?"; et cetera. One question was, "Does this mean that I don't have MS?" The scripted answer was, "Only a physician can make a determination about your health. We have a number of options for a new doctor, either here at our clinic or with other providers in the region (SCHEDULE APPOINTMENT)." To the potential question, "Do I need an attorney?" the response was, "I am not in a position to offer that kind of advice as our first priority is your health and well being. We have a number of options for a new doctor, either here at our clinic or with other providers in the region (SCHEDULE APPOINTMENT)."

¶8. After receiving her letter, Green contacted Singing River, which arranged for her to be evaluated by another neurologist.[2] This evaluation with a new doctor, Dr. Elizabeth Minto of Mobile, Alabama, occurred in early 2017 and concluded in May 2017 when Minto determined that Green did not have multiple sclerosis and did not need further treatment.[3]

¶9. After learning that Millette misdiagnosed her, Green sent Singing River and Millete the pre-suit "Notice of Claim" letter as required by Mississippi Code Annotated section 11-46-11 (Rev. 2012) on January 30, 2018. Neither responded, and on May 29, 2018, Green filed suit against Singing River for the negligence of its employee, Millette.

¶10. Singing River moved to dismiss Green's complaint, claiming that the action was time-barred. It argued that Green was put on notice of her possible claim against Millette when

---

[2] It is unclear whether Green called the hotline to get the appointment or whether she called the clinic directly to obtain the appointment with another doctor.

[3] Green's counsel could not give the specific day in May that Dr. Minto gave this diagnosis because they had not received all of Minto's medical records.

5

she received the November 16, 2016 letter and that she therefore had until November 16, 2017, to send her notice-of-claim letter and then file suit. The hospital also noted in its motion that there had been a press release issued November 17, 2016, concerning Millette's departure, which the hospital claimed gave Green additional notice of her potential claim.

¶11.    In response to the motion to dismiss, Green contended that the November 2016 letter lacked sufficient facts to put her on notice that she personally had been misdiagnosed by Millete. She contended that she did not know of her injury until May 2017. In the alternative, if there were any dispute as to when she learned of her claim, then that was a matter that should be submitted to a jury.

¶12.    After argument by counsel, the circuit court found Green's claims untimely and dismissed her case. In its ruling, the court referred to a similar case that was argued at the same time, *Davis v. Millette*, with similar facts, that the court had dismissed as well.[4] There, another patient of Millette's had received the November 2016 letter and allegedly filed an untimely suit. The circuit court adopted its reasoning in *Davis* and held that Green went to the doctor to get another opinion because the letter from the hospital informed her that there may be a problem. The problem was then confirmed in May 2017. Because the statute of limitations is subject to the discovery rule, the circuit court found that the one-year limitations period on Green's complaint began to run in November 2016 and expired in November 2017. The circuit court entered a judgment dismissing the civil action, and Green appealed to this Court.

---

[4] The *Davis* case is currently on appeal to this Court in case number 2019-CA-00208-COA.

¶13. Green contends that Singing River's November 2016 generic letter did not put her on notice that she had a claim against Millette and the hospital. In the alternative, she argued that the issue of whether the letter put her on notice of her claim was a question of fact for a jury to decide. Singing River argues that a reasonably diligent person would have known to investigate her misdiagnosis claim when she received the November 16, 2016 letter and that under the law, a negligence claim accrues when a person knew or reasonable should have known of negligent conduct. After considering the arguments of both parties, we agree with Green and reverse the circuit court's dismissal of her case, and we remand for further proceedings.

**Standard of Review**

¶14. "A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted presents questions of law, which an appellate court reviews de novo." *DeLoge v. DeSoto Cty. Sheriff's Dep't*, 230 So. 3d 1026, 1029 (¶9) (Miss. Ct. App. 2017). The de novo review standard applies to questions concerning the statute of limitations, *Am. Optical Corp. v. Estate of Rankin*, 227 So. 3d 1062, 1067 (¶19) (Miss. 2017), including the statute of limitations under the MTCA. *Kelley LLC v. Corinth Pub. Utils. Comm'n*, 200 So. 3d 1107, 1112-13 (¶14) (Miss. Ct. App. 2016).

¶15. A Rule 12(b)(6) motion to dismiss is decided on the face of the pleadings alone. *Williams v. Mueller Copper Tube Co.*, 149 So. 3d 527, 528-29 (¶3) (Miss. Ct. App. 2014). The allegations of the Plaintiff must be accepted as true, "and the motion should not be granted unless it appears beyond a reasonable doubt that the plaintiff will be unable to prove

7

any set of facts in support of [her] claim." *Jourdan River Estates LLC v. Favre*, 212 So. 3d 800, 802 (¶4) (Miss 2015). A reviewing court need not defer to the trial court's ruling. *Id*.

**Discussion**

¶16. The issue in this case is whether the circuit court erred in finding that Green's one-year limitations period began to run when she received the November 16, 2016 letter. There is no dispute that Singing River is a public institution and entitled to protections under the MTCA, including the notice of claims and the one-year statute-of-limitations provision found in Mississippi Code Annotated section 11-46-11. Because he was an employee of Singing River acting in the course of his employment when he treated Green, Millette is personally immune from suit under Mississippi Code Annotated section 11-46-7(2) (Rev. 2012). Section 11-46-11(3)(a) requires that "all actions . . . be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct . . . ." Before filing suit, a claimant must first send the chief executive officer of the MTCA entity a notice of the claim before the one-year statute-of-limitations period runs. The content of the notice of claim is prescribed in section 11-46-11(2)(b). After the notice of claim is sent, the claimant must wait ninety-five days before filing suit unless the MTCA entity denies the claim. § 11-46-11(3)(a). The claimant then has ninety days from the date of denial or the expiration of the ninety-five day waiting period, whichever is less, to file suit. § 11-46-11(3)(b).

¶17. "Whether a claimant has sufficient notice of a viable claim is to be determined on a case-by-case basis." *Estate of Butler v. PHC-Cleveland Inc.*, 282 So. 3d 441, 444 (¶9) (Miss. Ct. App. 2019). "The question of what knowledge should put a claimant on notice of the

existence of a viable claim is not soluble by any precise formula." *Sarris v. Smith*, 782 So. 2d 721, 725 (¶13) (Miss. 2001).

¶18.    The one-year statute-of-limitations provision is subject to the "discovery rule," which tolls the running of the limitations period in certain circumstances.[5] *Lyas v. Forrest Gen. Hosp.* 177 So. 3d 412, 416 (¶21) (Miss. 2015) (citing *Wayne Gen. Hosp. v. Hayes*, 868 So. 2d 997, 1000 (¶15) (Miss. 2004); *Wright v. Quesnel*, 876 So. 2d 362, 366 (¶10) (Miss. 2004)).  The discovery rule has been expressed in different ways.  In *Moore ex rel. Moore v. Memorial Hosp. of Gulfport*, 825 So. 2d 658, 667 (¶31) (Miss. 2002), the supreme court held that the statute is tolled "until a plaintiff should have reasonably known of some negligent conduct, even if the plaintiff does not know with absolute certainty that the conduct was legally negligent."  Later, in *Long v. Mem'l Hosp. at Gulfport*, 969 So. 2d 35, 43 (¶27) (Miss. 2007), the supreme court held that the discovery rule tolls the statute-of-limitations period "until a claimant, using reasonable diligence, could have first known of the injury itself, the cause of the injury, and the causative relationship between the injury and the conduct of the medical practitioner."  *See also Huss v. Gayden*, 991 So. 2d 162, 165 (¶5) (Miss. 2008).  In other words, the statutory limitations period under the MTCA begins to run "when all the elements of a tort, or cause of action, are present."  *Caves v. Yarborough*, 991 So. 2d 142, 147 (¶22) (Miss. 2008).  More recently, the supreme court has said that the inquiry centers on when the plaintiff knew or should have known of an injury.  *Am. Optical*

---

[5] For the genesis of the MTCA's discovery rule, see *Caves v. Yarborough*, 991 So. 2d 142, 154 (¶47) (Miss. 2008), which held that the discovery rule applies even though it was not enacted by the legislature and is not included in the language of the statute.

*Corp.*, 227 So. 3d. at 1068 (¶7). We have pointed out that the discovery rule "redirects the focus from when the injury occurred to when the negligence causing the injury was discovered." *Estate of Butler*, 282 So. 3d at 444 (¶8) (citing *Walfrup v. Eads*, 180 So. 3d 820, 826 (¶33) (Miss. Ct. App. 2015)).

¶19.    A claimant's diligence in investigating and appreciating his claim is another critical factor in the application of the discovery rule. "The focus is on the time that the patient discovers, or should have discovered by the exercise of reasonable diligence, that he probably has an actionable injury." *Lyas*, 177 So. 3d at 417 (¶21); *see also Hayes*, 868 So. 2d at 1000 (¶15) (quoting *Smith v. Sanders*, 485 So. 2d 1051, 1052 (Miss. 1986)). The inquiry does not center on the injury, but rather on "the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered." *Sutherland v. Estate of Ritter*, 959 So. 2d 1004, 1008 (¶12) (Miss. 2007); *see also Sarris v. Smith*, 782 So. 2d 721, 725 (¶14) (Miss. 2001) (holding that the plaintiff could not reasonably have known that the defendant's negligent conduct caused the injury until she acquired the decedent's medical records, which she diligently sought but the hospital delayed in providing); *Lyas*, 177 So. 3d at 419 (¶42) (finding that a dispute of fact precluded summary judgment on a suit brought by a widow seven years after a husband's death when she and family members diligently sought an amended death certificate that showed the husband died from an overdose of medication at the defendant hospital).

¶20.    "The question of whether a statute of limitations is tolled by the discovery rule turns on the factual determination of what the plaintiff knew and when." *Estate of Butler*, 282 So.

3d at 444 (¶10) (citing *Raddin v. Manchester Educ. Found. Inc.*, 175 So. 3d 1243, 1249 (¶13) (Miss. 2015)). Where there is a strong dispute over the applicability of the discovery rule, the issue should be determined by the finder of fact. *Id*. at (¶9) (citing *Miss. Valley Silica Co. Inc. v. Barnett*, 227 So. 3d 1102, 1119 (¶44) (Miss. Ct. App. 2016), *abrogated on other grounds by Portis v. State*, 245 So. 3d 457, 470-71 (¶32) (Miss. 2018)); *see also Milam v. Kelly*, 282 So. 3d 682, 688 (¶20) (Miss. Ct. App. 2019). However, the question may be taken away from the fact-finder "if reasonable minds could not differ as to the conclusion. . . ." *Am. Optical Corp.*, 227 So. 3d. at 1069 (¶24); *see also Pollan v. Wartak*, 240 So. 3d 1185, 1192 (¶16) (Miss. 2017); *see also Sanders*, 485 So. 2d at 1053.

¶21.    In the case at hand, Singing River argues that Green's receipt of the November 16, 2016 letter triggered the running of the limitations period. It contends that the letter gave Green all the information that she needed to investigate and file her notice of claim because the letter told her that the hospital "had questions about how Dr. Millette diagnosed and treated his patients with multiple sclerosis." But the letter does not say what those questions were, nor does it in any other way communicate that Dr. Millette was negligent in his diagnosis or in his treatment of patients with multiple sclerosis or of Green specifically. The letter does not say that Singing River fired Millette for misdiagnosing or mistreating patients. In fact in the letter, the hospital continued, saying, "We recognize that competent medical professionals often have differing opinions, especially when it involves complex neurological conditions." From this a reasonable person could infer that the hospital and Millette disagreed about how to diagnose and treat such patients, and, as a result, they parted ways.

11

Even the three physicians who raised concerns about Millette in their May 10 memo would not accuse Millette of negligence and specifically said that "this communication does not serve to accuse any individual of wrongdoing." Because Dr. Millette would no longer be treating Green and others, the hospital offered to make appointments for them to be reevaluated by another doctor in its "on-going review process" and to assist them "during this transition to a new doctor." The November 2016 letter was generic and sent to all of Millette's patients, not to Green individually. It included no specifics about any misdiagnosis or treatment of Green personally.

¶22. Singing River adds that its press notice and hotline script gave Green further notice that she was misdiagnosed by Millette. But there is no evidence in the record that Green saw the press notice or called the hotline. Even if she did, neither of these avenues would have given her any additional or different information than what was contained in the letter. Those manning the hot line were instructed to tell anyone who questioned whether they had been misdiagnosed that only another practitioner could answer. If anything, this supports Green's position. The argument that the letter sent to Millette's patients, the press notice, and or the hotline script provided Green notice of her individual claim fails.

¶23. Singing River contends that Green's response to the letter (i.e., her call for an appointment with a new doctor) was proof that she did in fact know of her potentially actionable claim and was investigating it. We disagree. There have been cases where a plaintiff's seeking medical attention for a condition was construed as proof that he or she knew enough about the injury to start the statute of limitations running. For example, in

12

*American Optical Corp.*, 227 So. 3d at 1074 (¶48), the supreme court held that a construction worker's silicosis products-liability action filed on May 13, 2013, was time barred because he had notice of his injury in 2007 when he sought treatment for and was diagnosed with a lung disease, COPD. The facts in Green's case are opposite to those in *American Optical Corp.* Here, before and even after the November 2016 letter, Green had no reason to believe she did not have multiple sclerosis. She suffered from unsteady gait, frequent falls, double vision, and waning memory—all symptoms of multiple sclerosis. In addition to Millette, two nurse practitioners had agreed she had multiple sclerosis after she had an MRI, which is a common diagnostic tool in diagnosing multiple sclerosis. Green's medical records reflected only an unquestioned diagnosis of multiple sclerosis. After being told in the letter that Millette would no longer be treating her, Green simply did as instructed—she called and was scheduled to see her "new doctor." Green's actions do not support Singing River's claim that she knew or should have known in November 2016 that she did not have multiple sclerosis. If anything, they show Green's reasonable diligence in discovering her claim.

¶24.    In this case, Green's injury was the misdiagnosis of her condition. We hold that the letter Green received from Singing River in November 2016 was insufficient to put her on notice of that injury or the act or omission that caused it. *Caves*, 991 So. 2d at 155 (¶53). Neither the face of the complaint nor any of the documents attached thereto or referenced therein demonstrate that the statutory limitations period expired before Green filed her notice of claim or her complaint. Therefore, the circuit court erred by granting Singing River's motion to dismiss the complaint.

13

¶25. Singing River also argues on appeal that Green's "Notice of Claim" letter was technically deficient, which should also bar her claim. However, Singing River did not raise this issue before the circuit court, and nowhere in that court's order was there any mention of a ruling on this argument. "Failure to raise an issue in a trial court causes operation of a procedural bar on appeal." *Birrages v. Ill. Cent. R.R. Co.*, 950 So. 2d 188, 194 (¶18) (Miss. Ct. App. 2006). Because Singing River did not challenge the sufficiency of the notice-of-claim letter in the proceedings below, it is procedurally barred from doing so now.

## Conclusion

¶26. Based on our de novo review, we hold that Singing River's November 2016 letter to Green was insufficient to put her on notice of her injury or the act or omission that caused her injury. Therefore, we hold that the circuit court erred by granting Singing River's motion to dismiss the complaint. We reverse the judgment and remand for further proceedings consistent with this opinion.

¶26. **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McCARTY AND C. WILSON, JJ., CONCUR. LAWRENCE, J., NOT PARTICIPATING.**