# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-01180-COA

**CHESTER SHORT AND LINDA SHORT**                    **APPELLANTS**

**v.**

**THE BREAK LAND COMPANY, LLC**                    **APPELLEE**

DATE OF JUDGMENT:               11/14/2022
TRIAL JUDGE:                    HON. ALBERT B. SMITH III
COURT FROM WHICH APPEALED:      BOLIVAR COUNTY CIRCUIT COURT,
                                FIRST JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANTS:       JOHN THOMAS LAMAR III
                                TAYLOR ALLISON HECK
ATTORNEYS FOR APPELLEE:         ARNULFO URSUA LUCIANO
                                JAMIE FERGUSON LEE
                                BETHANY ANN TARPLEY
NATURE OF THE CASE:             CIVIL - TORTS OTHER THAN PERSONAL
                                INJURY & PROPERTY DAMAGE
DISPOSITION:                    AFFIRMED - 10/01/2024
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., SMITH AND EMFINGER, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1. This lawsuit stems from the spring of 2017 when farmers Chester and Linda Short had severe damage to their crops from deer eating their soybean plants.[1] The deer were traveling from land controlled by nearby hunting clubs to the Shorts' crops. To protect their livelihood, the Shorts obtained depredation permits to shoot the deer on their cropland. The Shorts allege that in response, the hunting club to which they belonged, '27 Break Hunting

---

[1] This case is the fourth lawsuit and third appeal to arise out of the same operative facts.

Club Inc. (Break Hunting Club), adopted a rule in June 2017 stating any action taken by a member that is deemed detrimental to the club may result in fines and suspension or revocation of privileges. The Shorts were members of this hunting club due to their joint possession of three equity membership interests in The Break Land Company LLC (Break Land), which owns the hunting club's land. These three membership interests have an aggregate total market value of over $1,000,000.

¶2. In May 2020, the Shorts sued several defendants, including Break Hunting Club, for the deer's damage to their 2017 crops.[2] In response to the lawsuit, in September 2020, Break Hunting Club suspended all the Shorts' membership privileges. In September 2021, the Shorts filed the instant lawsuit in the Bolivar County Circuit Court against Break Land, Break Hunting Club, and several individual directors of the hunting club for claims related to the suspension or revocation of the Shorts' hunting club membership. The lawsuit's claims included corporate freezeout, breach of fiduciary duty, conversion, breach of contract, bad faith, and intentional infliction of emotional distress. Break Land filed a motion for judgment on the pleadings under Mississippi Rule of Civil Procedure 12(c), arguing the Shorts had stated a claim against only Break Hunting Club and not Break Land. After a hearing, the trial court granted the motion, dismissing Break Land with prejudice. The trial court certified the judgment as final as to Break Land under Mississippi Rule of Civil

---

[2] The Shorts and their farming operation (JLS Farm Partnership) sued Break Hunting Club and others in the Bolivar County Circuit Court. Claims included tortious interference with business relations, breach of contract, civil conspiracy, and private nuisance, among other claims. That case's appeal is currently before this Court, styled *JLS Farm Partnership, Chester Short and Linda Short v. '27 Break Hunting Club, Inc., '27 Break LLC and Kennedy Properties, LLC,* No. 2023-CA-00434-COA.

Procedure 54(b); thus, the appeal is properly before this Court.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶3.     In the spring of 2017, the Shorts' farming operation sustained heavy crop damage when hundreds of deer from nearby land owned by Break Land came onto their leased cropland and ate new soybean plants.  In response, the Shorts obtained depredation permits from the Mississippi Department of Wildlife, Fisheries and Parks (Department of Wildlife) to shoot the encroaching deer outside of hunting season.  When nearby hunting clubs, including Break Hunting Club, learned of the permits, they became upset.  The Shorts claim that the clubs took various actions to undermine their farming operation, including loss of the permits,[3] loss of the farming contract to certain land, and loss of soybean yields.  Further, on June 16, 2017, the board of directors of Break Hunting Club adopted the following rule:

> The Board of Directors shall enforce the Rules as adopted by the Board.  It may require *any member whose actions are detrimental to the club's membership, or its values, ON or OFF of the Club property* to appear before the Board; and after hearing and/meeting *the Board may impose such fines or revocation of privileges* as it deems in the best interest of the Club and its members; *including expulsion, revocation of hunting privileges* and use of Club facilities for such periods as are necessary.

(Emphasis added).  The Shorts claim the board instituted this rule to punish them for protecting their farming livelihood.

¶4.     About three years after this rule was instituted, on May 29, 2020, the Shorts and JLS

---

[3] The Shorts filed a complaint in the Hinds County Chancery Court to enjoin the Department of Wildlife from terminating the permits.  The case's appeal is currently before this Court in *Chester Short and JLS Farm Partnership v. Dr. Sam Polles, In His Official Capacity as Executive Director of The Mississippi Department of Wildlife, Fisheries and Parks and The Mississippi Department of Wildlife, Fisheries and Parks*, No. 2023-CA-00607-COA.

Farm Partnership filed a lawsuit against Break Hunting Club and others in the Bolivar County Circuit Court to recover for lost crop yields and other damages. *See supra* note 2. After process was served on Break Hunting Club, its board of directors sent a letter to the Shorts stating the board would determine whether the Shorts had violated this rule by filing this lawsuit, and what penalties, if any, should be imposed. Then, in a letter dated September 17, 2020, the board of directors for Break Hunting Club suspended all the Shorts' privileges of ownership in Break Hunting Club, using the rule its board adopted in June 2017. The letter stated, in part:

> The Board at its meeting found that *your actions have been so detrimental to the Club*, its Members and its activities as to warrant impositions of penalties against you as follows:
>
> *Hunting, fishing and use of the Clubs rights are suspended* for Chester Short, Linda Short . . . and any immediate family member for an indefinite time and at least until the litigation currently pending in the Circuit Court . . . of Bolivar County styled JLS Farm Partnership . . . Chester, Linda . . . Short vs. 27 Break Hunting Club, Inc., 27 Break, LLC . . . or any successor litigation against the same defendants remains unresolved. This includes any appeals of said litigation or a similar litigation. Once the litigation is resolved the Board may reconsider the suspensions.
>
> The suspension rights applies to your 27 Break Membership numbers 4 and 5.
> . . . .
>
> The suspension not only applies to hunting and fishing *but to any and all use of club facilities or club properties.* You are aware that *Break Land Company has leased all property* except for the lots so 27 Break Hunting Club controls access to these lands as well as the hunting and fishing rights.
>
> Under the rules of the Club your memberships . . . for future years will be deemed Inactive which will require a payment of one-half (½) of the normal dues and assessments to remain as Inactive memberships.

¶5.     On September 14, 2021, the Shorts filed the instant lawsuit in response to the revocation of their memberships in the hunting club, suing both Break Land and Break Hunting Club, as well as several directors of Break Hunting Club.  The September 2020 letter was attached to the complaint as the only exhibit.  In the complaint, the Shorts explained that they had been longtime members of "the hunting club and land company." They and their family members had abided by all the club's rules and timely paid their dues and assessments.  The Shorts also asserted:

> *The hunting club* is not a mere social club open to members by invitation but *is integrally tied to and is a material component of the Plaintiffs' economically valuable equity interests in The Break Land Company, LLC.* The Board's retaliatory suspension of the Plaintiffs' hunting rights on the land, using the pretext of the 'detrimental to the club's membership's rule,' has caused them to suffer other compensatory and consequential damages.

(Emphasis added).  In their complaint's breach of contract claim, the Shorts alleged that "[t]he suspensions of [their] memberships are a breach or breaches of the bylaws and rules and regulations of the hunting club and the operating agreement, bylaws and rules of The Break Land Company, LLC."  However, none of these documents were attached to the complaint.

¶6.     In July 2022, Break Land filed an amended answer, including a motion to dismiss[4] or, in the alternative, to stay or consolidate and a counterclaim.  Break Land attached to this

---

[4] Prior to Break Land's motion to dismiss, in April 2022, Break Hunting Club and its individual directors/defendants had filed a motion to dismiss under Mississippi Rule of Civil Procedure 12(b)(6), claiming this latest "duplicative" lawsuit was "an 'end run' attempt to harass" the defendants, "circumvent the applicable statute of limitations," and assert new claims against new defendants.  The movants argued the plaintiffs were engaged in the impermissible practice of claim-splitting.  The trial court denied the motion to dismiss, finding the plaintiffs were not engaged in claim-splitting.

pleading its operating agreement referenced in the Shorts' complaint.

¶7. On the same day, Break Land also filed a motion for judgment on the pleadings, arguing that Break Land and Break Hunting Club are two separate entities, and since the Shorts failed to allege any claims against Break Land, the claims against it should be dismissed.[5] After a hearing, the trial court granted Break Land's motion, finding the Shorts' allegations on the face of their complaint alone concerned actions taken only by Break Hunting Club, not Break Land.

¶8. Additionally, the trial court found the Shorts' claims of corporate freeze out, breach of fiduciary duty, conversion, and breach of contract "were precluded by the plain language of the Operating Agreement," which was attached to Break Land's amended answer. While the Shorts argued the trial court could not consider Break Land's operating agreement without turning the motion into one for summary judgment, the trial court held it could under *DeLoge v. DeSoto County Sheriff's Department*, 230 So. 3d 1026, 1030 (¶12) (Miss. Ct. App. 2017). *DeLoge* held that "[t]he court may certainly consider the contents of the complaint, the documents attached to the complaint, and the documents that are referred to in the complaint if they are central to the plaintiff's claim, even though they are not attached to the complaint." *Id.* (quoting *Breeden v. Buchanan*, 164 So. 3d 1057, 1068 (¶53) (Miss. Ct. App. 2015)). Because the complaint referred to the operating agreement, the trial court found it proper to consider. The trial court concluded that in "[r]emoving the factual allegations against 27 Break Hunting Club, Inc., the Shorts [we]re left with nothing but legal

---

[5] In the Shorts' response to Break Land's motion for judgment on the pleadings, they alternatively moved to amend their complaint.

6

conclusions masquerading as facts."[6]  Accordingly, the trial court dismissed the Shorts' claims against Break Land with prejudice.  It is from this dismissal that the Shorts filed the instant appeal.

## STANDARD OF REVIEW

¶9.     "Since a motion for judgment on the pleadings under Mississippi Rule of Procedure 12(c) raises an issue of law," the standard of review for granting the motion is de novo.  *R.J. Reynolds Tobacco Co. v. King*, 921 So. 2d 268, 270 (¶10) (Miss. 2005) (quoting *Hartford Cas. Ins. Co. v. Halliburton Co.*, 826 So. 2d 1206, 1210 (¶8) (Miss. 2001)).  A motion for judgment on the pleadings serves a similar function to a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *City of Tupelo v. Martin*, 747 So. 2d 822, 829 (¶26) (Miss. 1999).  "On a Rule 12(c) motion, the allegations in the complaint must be taken as true, and the motion should not be granted unless it appears beyond any reasonable doubt that the non-moving party will be unable to prove any set of facts in support of the claim which would entitle the non-movant to relief."  *R.J. Reynolds*, 921 So. 2d at 271 (¶10) (citing *Bridges ex rel. Bridges v. Park Place Ent.*, 860 So. 2d 811, 813 (¶5) (Miss. 2003)).

## ANALYSIS

¶10.    The Shorts argue that their complaint alleged proper causes of action against Break Land and that its operating agreement does not preclude those claims.  Alternatively, they

---

[6]  *See Penn Nat'l Gaming Inc. v. Ratliff*, 954 So. 2d 427, 431 (¶6) (Miss. 2007) (citing *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)) ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss."), *superseded by statute on other grounds*, Registered Agents Act, Miss. Code Ann. § 79-35-15 (Rev. 2013), 2012 Miss. Laws ch. 382, § 15 (H.B. 1162), *as recognized in Purdue Pharma L.P. v. State*, 256 So. 3d 1, 5-6 (¶¶11-16) (Miss. 2018).

argue that the trial court's consideration of Break Land's operating agreement was improper or converted the motion for judgment on the pleadings into one for summary judgment. We shall discuss each issue in turn.

¶11. Rule 12(c) on motions for judgment on the pleadings provides:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56; however, if on such a motion matters outside the pleadings are not presented, and if the motion is granted, leave to amend shall be granted in accordance with Rule 15(a).

## I. The Complaint

¶12. The trial court found all the allegations in the Shorts' complaint concerned action taken by Break Hunting Club and not Break Land. Further, the trial court deemed the two entities were separate and distinct; thus, the court would "not impute the actions of one entity to the other." Therefore, the trial court granted Break Land's motion for judgment on the pleadings and dismissed Break Land from the lawsuit.

¶13. The Shorts disagree that their complaint alleges causes of action against only Break Hunting Club, pointing to the following facts from their complaint. They jointly possessed three equity membership interests in Break Land, which gave them membership in Break Hunting Club. When the board of directors of Break Hunting Club revoked the Shorts' membership in June 2017, the Shorts claim their ownership in Break Land was revoked as well. The deer that damaged their crops came from land Break Land owned. Break Land

leased its property to Break Hunting Club, which controls access to the land, as well as hunting and fishing.

¶14.    The Shorts contend that even though the September 17, 2020 letter revoking their club membership was only signed by the secretary of Break Hunting Club's board of directors, it does not mean Break Land was not involved in the decision.  The Shorts conclude that "Break Land Company cannot own the land at issue and literally *create* the membership rights in the Hunting Club, and at the same time claim that it had no involvement in revoking said membership rights."

¶15.    We are not persuaded by this argument. Break Hunting Club and Break Land are two separate entities, and the complaint alleges no involvement of Break Land in revoking the Shorts' membership in Break Hunting Club.  The Shorts never allege any actions taken by Break Land or its managers; instead, the complaint focuses on the actions of Break Hunting Club or its board of directors.  As the trial court stated in its judgment, there were "no allegations that the Break Land Company's Managers and/or Members met to discuss taking action against the Shorts."  Break Land never "took any vote against the Shorts," did not send the Shorts the September 17, 2020 letter,[7] and did not exclude the Shorts from Break Hunting Club or its leased lands.

¶16.    The following actions the Shorts alleged involve only Break Hunting Club, not Break Land. Break Hunting Club took action against the Shorts when it learned of the depredation

---

[7] The September 17, 2020 letter was on Break Hunting Club letterhead, discussed the revocation of the Shorts' hunting club membership taken by the board of directors, and mentioned Break Land only as lessor to property Break Hunting Club controlled.

9

permits. Break Hunting Club's board of directors then adopted the June 2017 rule allowing the board to suspend or revoke membership privileges to those members "whose actions were detrimental to the club's membership." After Break Hunting Club was served with the May 2020 lawsuit, Break Hunting Club's board of directors sent the Shorts a letter informing them the board was going to determine if the Shorts had violated the rule and any penalties to impose. In September 2020, Break Hunting Club's board of directors revoked the Shorts' membership privileges; the Shorts do not allege that Break Land revoked these rights. In sum, Break Land took none of these actions. We see no reason why Break Land cannot own the land at issue, lease it to Break Hunting Club, and have no involvement in the club's revoking the right to use the property. To say otherwise is to impute improper actions Break Land did not take.

¶17.    Taking the facts alleged in the complaint as true, the Shorts failed to state any causes of action against Break Land.

## II.    Break Land's Operating Agreement

¶18.    The Shorts argue that the trial court erred when determining that Break Land's operating agreement also barred the Shorts' claims of corporate freeze out, breach of fiduciary duty, conversion, and breach of contract claim. Alternatively, the Shorts argue that the trial court erred in even considering the operating agreement and that doing so converted the motion into one for summary judgment.

### A.    The Operating Agreement barred the Shorts' claims.

¶19.    The only document the trial court considered other than the complaint was the

10

operating agreement, which Break Land attached to its amended answer. The Shorts contend that their claims are based in part on the relationship between Break Land and Break Hunting Club. Because the operating agreement never even mentions Break Hunting Club, the Shorts claim that the operating agreement alone cannot constitute "the entire universe of documents relevant to the relationship between [Break Land] and [Break Hunting Club]." They contend that other documents mentioned in their complaint, such as the bylaws and rules/regulations of both entities, would establish how Break Land and Break Hunting Club relate if the case were allowed to proceed with discovery.[8]

¶20. We first note the Shorts failed to attach any of these documents to their complaint; therefore, only the operating agreement that Break Land attached to its amended answer could have been considered. Break Hunting Club and hunting rights are not mentioned in the operating agreement. In fact, the agreement, which "sets forth the entire understanding of the parties with respect to the subject matter," provides:

> [a]ll property owned by the Company shall be deemed to be owned by the Company as an entity, and no Member shall be deemed to own any such property or any portion of the same, except the Members shall be entitled to a lease for a home or cabin site on the property of the Company.

Lastly, this Court does not need to consider the operating agreement to find that the dismissal of the claims against Break Land was proper, but if we do, none of the Shorts' claims allege that Break Land violated a duty or action found within the operating agreement

---

[8] The Shorts' breach of contract claim states: "The suspensions of [the Shorts'] memberships are a breach . . . of the bylaws and rules and regulations of the hunting club and the operating agreement, bylaws and rules of [Break Land]." The complaint did not make this allegation on "information and belief." Therefore, it implied that the Shorts had knowledge of the contents of the documents.

11

against the Shorts.

¶21.    Break Land's operating agreement describes its formation as well as defines the classes of members, their voting rights, and their meetings.  The Shorts do not allege any deprivation of these rights or violations.  The operating agreement also describes the management of company managers and decisions which require approval by members.  The Shorts do not allege they were frozen out of these decisions.  The agreement defines how distributions are allocated to members.  The Shorts do not allege that Break Land failed to distribute them funds.  In sum, the Shorts do not allege Break Land breached any duty found within the operating agreement; therefore, the trial court properly found the Shorts' claims barred by the agreement.

> B.    *The trial court's consideration of the operating agreement was proper.*

¶22.    In the alternative, the Shorts argue that the trial court erred in considering the operating agreement at all and, in doing so, converted the motion for judgment on the pleadings into one for summary judgment.  "Unlike a Rule 56 motion for summary judgment, a Rule 12(c) motion for judgment on the pleadings is decided on the face of the pleadings alone."  *Huff-Cook Inc. v. Dale*, 913 So. 2d 988, 990 (¶10) (Miss. 2005) (citing *Hartford*, 826 So. 2d at 1211 (¶15)).  If the trial court considers matters outside of the pleadings, Rule 12(c) provides that "the motion shall be treated as one for summary judgment" under Rule 56.  *Id.*

¶23.    The Shorts argue that when Break Land merely attached a copy of the operating agreement to its amended answer, it did not convert the agreement into a "pleading" that the

trial court could consider. Further, they claim that while there is leeway to consider matters outside of the pleadings, that leeway is limited to documents attached to the plaintiff's, not the defendant's, pleadings. Caselaw holds otherwise.

¶24. The trial court properly determined that it could consider the operating agreement under *DeLoge* even though it was attached to Break Land's amended answer because the agreement was referenced in and central to the Shorts' complaint. *DeLoge* held that in the context of a motion to dismiss,[9] documents referenced in the complaint may be considered "if they are central to the plaintiff's claim," even though not attached to the complaint. *DeLoge*, 230 So. 3d at 1030 (¶12) (quoting *Breeden*, 164 So. 3d at 1068 (¶53)). "When any claim . . . is founded on . . . a written instrument, a copy thereof should be attached to or filed with the pleading unless sufficient justification for its omission is stated in the pleading." *Breeden*, 164 So. 3d at 1068 (¶50) (quoting M.R.C.P. 10(d)). Although a plaintiff is not under any obligation to attach these documents to his or her action, "a defendant may introduce certain pertinent documents if the plaintiff failed to do so. Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his or] her claim." *Id.* at (¶52) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

¶25. The same principle would apply here. The Shorts' claims are based on alleged rights

---

[9] This rule would also apply to a motion for judgment on the pleadings since a Rule 12(b)(6) motion to dismiss serves a similar function to a Rule 12(c) motion. *Hartford*, 826 So. 2d at 1210 (¶8) (citing *City of Tupelo*, 747 So. 2d at 829 (¶26)).

and ownership in Break Land, which are outlined in the operating agreement. The Shorts did not attach the agreement to their complaint. Because the agreement was mentioned in the complaint and part of the Shorts' claims, the trial court did not err in considering it at this stage of the litigation. Further, the trial court's consideration did not convert the motion to one for summary judgment, which the Shorts argue would trigger additional rights for them, such as discovery. This argument is without merit.

### III. Rule 15(a) Motion to Amend Complaint

¶26. In the alternative, the Shorts request they be allowed to amend their complaint under Mississippi Rule of Civil Procedure 15(a), which provides:

> On sustaining a . . . judgment on the pleadings . . . leave to amend shall be granted when justice so requires upon conditions and within time as determined by the court, provided matters outside the pleadings are not presented at the hearing on the motion. . . . leave shall be freely given when justice so requires.

"Motions for leave to amend a complaint are left to the sound discretion of the trial court." *Breeden*, 164 So. 3d at 1063 (¶27) (quoting *Webb v. Braswell*, 930 So. 2d 387, 392 (¶8) (Miss. 2006)).

¶27. In response to Break Land's motion for judgment on the pleadings, the Shorts requested in the alternative to the trial court's dismissing the action outright that they be allowed to amend the complaint under Rule 15(a). On appeal, the Shorts claim the trial court's "denial" of their request to amend the complaint "was error"; however, the trial court never ruled on the Shorts' request.

¶28. The same issue was presented in *Archer v. Harlow's Casino Resort & Spa*, 335 So.

14

3d 613 (Miss. Ct. App. 2022). On appeal, the plaintiff/appellant argued that the trial court erred in dismissing her complaint under Rule 12(b)(6) without allowing her to amend it under Rule 15(a). *Id.* at 614 (¶2). However, like here, "at no time during the proceedings" did the plaintiff "ever actually file a motion to amend her complaint" but, instead, only requested it in her response to the casino/defendant's motion to dismiss. *Id.* at 618 (¶22). Further, as here, after the trial court granted the casino's motion to dismiss, the plaintiff did not seek leave to amend her complaint under Rule 15(a). *Id.* at 619 (¶23). Additionally, like here, the plaintiff did not provide any details about how she planned to amend her complaint. *Id.* at 618 (¶22) & n.6.

¶29.    Regarding motions to amend a pleading, Mississippi Rule of Civil Procedure 7(b)(1) provides that "[a]n application to the court for an order *shall be by motion* which, unless made during a hearing or trial, *shall be made in writing, shall state with particularity the grounds therefor*, and shall set forth the relief or order sought." (Emphasis added). The *Archer* court stated that if the plaintiff "wanted the trial court to rule on her request for leave to amend her complaint," she should have requested it clearly in a motion. *Archer*, 335 So. 3d at 619 (¶22) (quoting *Magee Cmty. Care Ctr. LLC v. Perkins*, 333 So. 3d 34, 40 (¶16) (Miss. Ct. App. 2021)).[10]

¶30.    We find *Archer* instructive. The Shorts never filed a separate motion for leave to

_____

[10] In *Archer*, the trial court did not specify whether its dismissal was with or without prejudice; moreover, the plaintiff was pro se. *Id.* at 619 (¶¶24, 25). Therefore, the *Archer* court reversed on this issue and remanded the case to the trial court with instructions to dismiss the complaint without prejudice and allow the plaintiff to amend her complaint under Rule 15(a) if she so requested. *Id.* at (¶25).

amend their complaint; they only requested it in their response to the motion for judgment on the pleadings. In its order of dismissal, the trial court did not rule on that request. This Court generally "[can]not hold trial courts in error on issues not presented to them for consideration" and "cannot find the trial court in error on an issue it neither granted nor denied." *Id.* (quoting *Bay Point Props. Inc. v. Miss. Transp. Comm'n*, 201 So. 3d 1046, 1055 (¶18) (Miss. 2016); *Magee Cmty. Care Ctr.*, 333 So. 3d at 39 (¶15)). Here, once the trial court granted the motion to dismiss, the Shorts could have filed a Rule 59 motion for rehearing formally raising the right to amend. They did not. Accordingly, this request is without merit.

**CONCLUSION**

¶31. Based on the foregoing, the trial court did not err in granting Break Land's motion for judgment on the pleadings. Taking the facts alleged in the complaint as true, the Shorts failed to allege any claims against Break Land. Additionally, the trial court did not err in considering Break Land's operating agreement, which, in setting out the rights and obligations of the contracting parties, failed to mention any right of members, such as the Shorts, to hunt on the land Break Land owned. Accordingly, we affirm the trial court's judgment.

¶32. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. LAWRENCE, J., NOT PARTICIPATING.**

16